LUCKENBILL et al., Appellants,

v.

MIDWESTERN INDEMNITY COMPANY, Appellee.

[Cite as *Luckenbill v. Midwestern Indemn. Co.* (2001), 143 Ohio App.3d 501.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 01–CA–1536.

Decided June 1, 2001.

cases, and thus there was no argument to be made that the band had waived any of its stated privacy interests.

*Craig A. Dynes,* for appellants.

*Stephen V. Freeze,* for appellee.

GRADY, Judge.

Daniel Luckenbill, Sr., on his own behalf and as administrator of the estate of his deceased wife, Hilda Luckenbill, appeals from a summary judgment in favor of defendant Midwestern Indemnity Company ("Midwestern").

On July 18, 1997, Hilda Luckenbill was killed when the automobile she was driving was struck head-on by an automobile driven by Steven Bolyard. Bolyard,

the tortfeasor, was covered by two policies of liability insurance, each with $100,000 policy limits. Both policies paid Hilda Luckenbill's estate the full policy amount.

Defendant Midwestern had issued a homeowner's liability insurance policy to Hilda and Daniel Luckenbill with a $300,000 policy limit. After settling with Bolyard, Daniel Luckenbill made a demand for payment of underinsured motorist coverage under the Midwestern policy. Midwestern denied coverage.

Daniel Luckenbill filed this action against Midwestern, seeking a declaration that Hilda Luckenbill's estate is entitled to underinsured motorist benefits under the Midwestern policy. Midwestern denied that the estate was entitled to uninsured/underinsured motorist ("UM/UIM") coverage under the homeowner's policy, and it sought a declaration so holding.

The parties entered into stipulations and filed motions for summary judgment regarding whether the estate was entitled to underinsured motorist coverage under the Midwestern policy and, if so, how much it was due. The trial court granted Midwestern's motion and denied Luckenbill's. The court made three findings.

The trial court found, first, that the Luckenbills' Midwestern policy does provide underinsured motorist coverage because the policy covered injuries sustained while using some types of vehicles. The trial court nevertheless limited the amount that Daniel Luckenbill is eligible to receive under the Midwestern policy to $100,000, the difference between the limits of the Midwestern policy and the amount that the estate was paid by Bolyard. However, the trial court further found that Daniel Luckenbill is barred from recovering anything at all under the Midwestern policy because the estate had failed to comply with the terms and conditions with respect to notice of the loss to the insurer set forth in the liability portion of the policy.

Daniel Luckenbill filed timely notice of appeal. He presents three assignments of error.

"Third Assignment of Error

"The trial court erred in finding that the plaintiffs must comply with conditions and duties set forth in the liability portion of the subject homeowner's policy in reference to underinsured motorist coverage."

Because our determination on the third assignment of error dictates whether Daniel Luckenbill may receive any amount under the Midwestern policy for the underinsured motorist claim, we will begin with the third assignment.

Former R.C. 3937.18, which became effective on October 24, 1994, was in effect when the Midwestern policy was issued. It required an insurer to provide

UM/UIM coverage in every automobile liability or motor vehicle liability policy of insurance issued, unless the policyholder declined coverage. If UM/UIM coverage was not offered, it became part of the policy as a matter of law.

The trial court determined that while R.C. 3937.18 entitled Hilda Luckenbill's estate to UM/UIM coverage under the Midwestern policy, Midwestern was relieved of its duty to pay any sum because Daniel Luckenbill, her executor, had failed to comply with the express conditions in the policy that provided the coverage.

The policy Midwestern issued to the Luckenbills set forth conditions for liability coverage under section II, stating:

"3. Duties After Loss. In case of an accident or 'occurrence', the 'insured' will perform the following duties that apply. You will help us by seeing that these duties are performed:

"a. Give written notice to us or our agent as soon as is practical, which sets forth:

"(1) the identity of the policy and 'insured';

"(2) reasonably available information on the time, place and circumstances of the accident or 'occurrence'; and

"(3) names and addresses of any claimants and witnesses;

"b. Promptly forward to us every notice, demand, summons or other process relating to the accident or 'occurrence';

"c. At our request, help us:

"(1) to make settlement;

"(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to an 'insured';

"(3) with the conduct of suits and attend hearings and trials; and

"(4) to secure and give evidence and obtain the attendance of witnesses;

"* * *

"6. Suit Against Us. No action can be brought against us unless there has been compliance with the policy provisions." (Midwestern policy at 16.)

The Midwestern policy also set forth the following condition, which applied to both section I, the section that dealt with property coverage, and section II, liability coverage:

"8. Subrogation. An 'insured' may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of

rights of recovery for a loss to the extent that payment is made by us." (Midwestern Policy at 18.)

Notice provisions serve several important purposes in insurance contracts. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 725 N.E.2d 646. Notice provisions provide the insurer an opportunity to investigate the accident and determine if the claim is covered by the policy. *Id.* Notice provisions also allow the insurer to "control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims." *Id.* at 302–303, 725 N.E.2d at 655, citing *Am. Ins. Co. v. Fairchild Industries, Inc.* (E.D.N.Y.1994), 852 F.Supp. 1173, 1179. In addition, notice allows an insurer time to evaluate the merits of a claim in order to defend against fraudulent, invalid, or excessive claims. *Id.* Notice requirements apply to UM/UIM coverage as well as to coverage for an insured's own liability. *Wilson v. Wilson* (Apr. 27, 2001), Montgomery App. No. 18572, unreported, 2001 WL 427403.

The parties stipulated that while the accident had occurred on July 18, 1997, Daniel Luckenbill failed to notify Midwestern of an intent to submit an underinsured motorist claim until May 7, 1999. Before Midwestern became aware of the accident, Daniel Luckenbill had settled the claims against the tortfeasor and released him from liability.

 Late notice is not fatal to an insured's claim if the insurer cannot demonstrate prejudice. *Moraine Materials Co. v. Cardinal Operating Co.* (Nov. 13, 1998), Montgomery App. No. 16782, unreported, 1998 WL 785363. However, if an insured destroys an insurer's right to subrogation by releasing the tortfeasor, the insurer is prejudiced. *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456; *Back v. Am. States Ins. Co.* (Nov. 1, 1995), Montgomery App. No. 15195, unreported, 1995 WL 643121.

 Here, the late notice prejudiced Midwestern because it was then unable to pursue a subrogation claim against the tortfeasor. Therefore, it is clear from the facts presented that Daniel Luckenbill violated the notice requirements of the policy, to Midwestern's prejudice. However, an important and difficult issue remains: whether an insured is bound at all by the conditions of a liability policy in an insurance policy that does not of its terms provide UM/UIM coverage when UM/UIM coverage is impressed on the policy by operation of law.[1]

---

1. Midwestern did not appeal from the trial court's decision that UM/UIM coverage is impressed on its policy by operation of law. After the merit briefs were filed, Midwestern urged us to rely on the recent decision in *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, 744 N.E.2d 713, to find that the trial court erred when it found that UM/UIM coverage exists. However, as Midwestern filed no notice of appeal or cross-appeal, and

Daniel Luckenbill argues that the notice provisions of the Midwestern policy do not apply because UIM coverage is imposed not by the policy but as a matter of law. In other words, he argues that he is not bound by the conditions for liability coverage in the Midwestern policy because his coverage does not arise from the terms of the policy.

In support of this proposition, Daniel Luckenbill cites *Selander v. Erie Ins. Group* (Dec. 31, 1997), Darke App. No. 97CA1432, unreported, 1997 WL 815699; *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 595 N.E.2d 997; and *Myers v. Safeco Ins. Co. of Am.* (Feb. 18, 2000), Licking App. No. 99CA00083, unreported, 2000 WL 329800, reversed in (2001), 91 Ohio St.3d 333, 744 N.E.2d 1162. *Selander*, which was later affirmed by the Ohio Supreme Court, see 85 Ohio St.3d 541, 709 N.E.2d 1161, and *Demetry* involve substantially the same issue: whether policy *exclusions* apply where coverage is impressed by operation of law?

In *Selander*, the liability portion of a business liability policy extended motor vehicle coverage but only to "hired" or "non-owned" automobiles. Because they were driving their own vehicle when the accident occurred, the insureds would not have qualified for liability coverage had they been at fault. We found, however, that the insureds were entitled to UM/UIM coverage as a matter of law because UM/UIM coverage is not limited by the circumstantial exclusions in the liability portion of the policy. We cited *Demetry* for this proposition.

In *Demetry*, an employee and her unborn child were killed in a collision that occurred while the employee was driving in her own car in the scope of her employment. The trial court found that the employee had no UM/UIM coverage because the exclusions in the liability portion of the policy prohibited coverage for the employee under the circumstances. The appellate court reversed, finding that exclusionary language in a policy could not be imposed upon underinsured coverage implied by law. The court noted that "there is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured [motorist] coverage from being broader than liability coverage." *Demetry, supra*, at 698, 595 N.E.2d at 1001.

We find that the situations in *Selander* and *Demetry*, wherein an *exclusion* from coverage under the liability portion of the insurance policy was held not to apply where a duty to provide UM/UIM coverage is impressed on the policy as a matter of law, are distinguishable from the facts here, which involve instead a *condition* for coverage.

The policy provision here at issue, the notice provision, is a general condition imposed upon the policy with respect to any liability coverage it provides.

---

because appellant Luckenbill has not assigned error in that regard, the issue is not before us for review.

UM/UIM coverage is liability coverage, albeit for the benefit of the insured with respect to the liability of a tortfeasor who is uninsured or underinsured. When that coverage is imposed by law, as in *Selander* and *Demetry*, it may not be diminished in its scope by circumstantial exclusions which are matters the parties never contemplated. However, the right to coverage may be conditioned on compliance with provisions the parties did contemplate. Here, they agreed to condition liability coverage on the insured's compliance with certain notice requirements. His failure to comply with those requirements likewise terminated the UM/UIM liability coverage involved, notwithstanding that it was imposed by law and not by agreement.

In *Myers, supra*, the Fifth District declined to make this distinction. There, the court decided that a condition imposed under a homeowner's policy that required preservation of the insurer's subrogation rights against a tortfeasor could not bar the insured from collecting under implied UM/UIM coverage. The court stated:

"The parties in the case sub judice never intended underinsured coverage to be provided under the Safeco policy in the first place. 'As such, there could be no negotiated *exclusions* intended to be implied to the underinsured coverage.'" (Emphasis added.) *Id.* at * 6 (quoting *Demetry, supra*, at 698, 595 N.E.2d at 1001).

We believe that the *Myers* court confused the concepts of "exclusions" from coverage addressed in *Demetry* and the conditions for coverage that were there involved and are involved here. As we are not bound by *Myers*, we decline to follow it.

■ We find that a general, predicative condition for coverage in a policy of liability insurance, such as a notice provision, applies to UM/UIM coverage imposed by law for the benefit of the insured to the same extent that it applies under the policy's terms for liability coverage, which likewise benefits the insured when he is at fault. Case law from this district, as well as from the Ohio Supreme Court and a federal district court applying Ohio law, supports this holding.

In *Lutz v. Redwine* (Oct. 25, 1996), Montgomery App. No. 15859, unreported, 1996 WL 612862, we addressed a situation in which an insured informed his automobile insurance carrier that he was attempting to settle with the tortfeasor, yet did not inform the insurer how much was offered or request consent to settle for that amount. Because the insured had not elected to disclaim it, he had UM/UIM coverage as a matter of law. We held that a settlement that releases a tortfeasor constitutes interference with the underinsured motorist carrier's sub-rogation rights. Therefore, an insured is barred from recovery unless the UIM

insurer is "put on notice of the settlement offer and either consents to the acceptance of that offer, or takes no action within a reasonable time." *Id.* at * 7–8. Because the notice was insufficient, we entered judgment for the defendant insurance company.

In *Meridian Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.* (June 5, 1998), S.D. Ohio, E.D. No. C2–97–753, unreported, a federal district court addressed a situation in which a state court had determined that the Meridian farmowner's policy provided coverage for certain types of motor vehicles, such that UIM coverage could be imposed as a matter of law. The district court was presented with a dispute between the farmowner's insurance carrier and the automobile insurance carrier regarding the amount that each was required to pay to the insured to satisfy her UIM claim. The court found that an excess clause covering the liability portion of the farmowner's policy applies even where coverage was implied as a matter of law:

"Thus, giving effect to what the Court conceives to be the plain language of the policy, even in this unusual situation where the policy did not contemplate the existence of liability for underinsured motorist benefits, the Court believes that the excess clause in the policy should be given effect." *Id.* at *19–20.

The Ohio Supreme Court arrived at the same result when it addressed a similar situation in *Duriak v. Globe Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 28 OBR 168, 502 N.E.2d 620, overruled on other grounds by *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317. *Duriak* involved an uninsured motorist claim brought by a motorist insured under two insurance policies. The first policy contained liability coverage, coverage for collision loss, medical payments, and uninsured motorist coverage. The second policy contained only excess liability coverage and no uninsured motorist protection. The insured did not notify the primary insurer within the one-year limitation period found in the primary insurance policy. The court found that the provision in the excess policy predicating recovery upon compliance with the conditions found in the primary insurance policy was effective to preclude recovery under the excess policy, even where UM/UIM coverage was imposed as a matter of law.

The General Assembly required insurers to offer UM/UIM liability coverage to better allocate the risks of losses occasioned by the torts of motorists who are uninsured or underinsured. When an insurer fails to offer UM/UIM coverage in a policy of automobile liability insurance, a duty to provide coverage is impressed on the policy by operation of law. The insured then has a right to UM/UIM coverage, even though he has paid no premium for it. Nevertheless, UM/UIM coverage remains a contract right, not an entitlement. If the insured then fails to satisfy the conditions the policy imposes on that right, the insured forfeits his rights under the policy to UM/UIM coverage. Notice requirements are one such

condition. Such conditions are no less restrictive on UM/UIM coverage than are, for example, policy limits, which are likewise governed by the agreement the parties made. Stated otherwise, when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer.

For the foregoing reasons, we find that the trial court did not err when it determined that Daniel Luckenbill is barred from recovery under the Midwestern policy for failure to comply with the notice provisions found in the policy as conditions for coverage. Therefore, Daniel Luckenbill's third assignment of error is overruled.

"First Assignment of Error

"The trial court erred in finding that the insureds, Daniel D. Luckenbill and Hilda S. Luckenbill, were entitled to implied underinsured motorist coverage in the total amount of three hundred thousand dollars ($300,000.00)."

"Second Assignment of Error

"The trial court erred in finding that the defendant, Midwestern Indemnity Company, was entitled to a setoff of two hundred thousand dollars received from the tortfeasor."

The first and second assignments of error are rendered moot by our resolution of the third assignment of error. Therefore, pursuant to the discretion we are afforded by App.R. 12(A)(1)(c), we decline to determine them.

### Conclusion

Having overruled the third assignment of error, we affirm the judgment from which this appeal was taken.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.