Debbra **LEPLEY**, Individually and as the Administratrix of the Estate of Jack Showalter, Jr., Deceased. et al., Plaintiffs,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**, et al. Defendants.

No. 5:01–CV–535.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 29, 2001.

Kenneth L. Gibson, Weick, Gibson & Lowry, Cuyahoga Falls, OH, Stanley P. Aronson, Aronson & Associates, Akron, OH, for Debbra Lepley.

David J. Fagnilli, Davis & Young, Cleveland, OH, for Hartford Ins. Co.

Alton L. Stephens, Jr., D. John Travis, Larry C. Greathouse, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for St. Paul Surplus Lines Ins. Co.

J. Douglas Drushal, Critchfield, Critchfield & Johnson, Wooster, OH, for J. Douglas Drushal, mediator.

## ORDER

GWIN, District Judge.

On September 4, 2001, Defendant Hartford Accident and Indemnity Company ("Hartford Indemnity") filed a motion for summary judgment [Doc. 34]. On the same date, St. Paul Surplus Lines Insurance Company ("St. Paul Insurance") also filed a motion for summary judgment [Doc. 41]. Responding, Plaintiff Debbra Lepley, individually and as Administratrix of the Estate of Jack Showalter, Jr., opposed the motion. In addition, Plaintiff Lepley herself moved this Court for partial summary judgment against Hartford Indemnity [Doc. 39] and St. Paul Insurance [Doc. 40]. Because the Court finds that Lepley failed to give Defendants Hartford Indemnity and St. Paul Insurance notice of her claim and failed to protect their rights to subrogation, the Court grants Defendants Hartford Indemnity's and St. Paul Insurance's motions for summary judgment and denies Plaintiff Lepley's motions for partial summary judgment.

### I. Background

On September 10, 1986, Paula Rosvanis backed her vehicle out of an alley, failed to yield, and hit the motorcycle driven by Jack Showalter, Jr. On September 15, 1986, Showalter died of injuries he sustained in the accident with Rosvanis. Plaintiff Lepley, formerly known as Debbra Showalter, was married to Jack Showalter at the time of his death. Two daughters also survived Showalter.

The Stahl Metal Company ("Stahl") employed Showalter at the time of the accident and his death. Stahl is a subsidiary of the Scott & Fetzer Company ("Scott & Fetzer"). At the time of the accident and Showalter's death, Hartford Indemnity insured Scott & Fetzer under Policy No. 45 CSE H15456E. Hartford Indemnity insured Scott & Fetzer under a commercial general liability policy with $1 million limits. Besides the Hartford Indemnity policy, St. Paul Insurance insured Scott & Fetzer under an umbrella excess policy with excess liability limits of $2 million.

Again, Showalter died more than fifteen years ago. Shortly after his death, Plaintiff Lepley made claim against tortfeasor Paula Rosvanis. Rosvanis and her insurer settled Lepley's claim for $100,000. The Probate Court of Marion County, Ohio, approved the settlement on August 4, 1987. Lepley settled the claims against Rosvanis without notice or approval from either Hartford Indemnity or St. Paul Insurance. Not until Lepley brought this action on March 7, 2001, did she give the defendants notice of her claim arising from the 1986 accident.[1]

In bringing her claim, Plaintiff Lepley says that she is an insured, entitled to underinsured motorist benefits under the Hartford Indemnity and the St. Paul Insurance policies. Plaintiff Lepley argues

---

1. Plaintiff Debbra Lepley filed an amended complaint, naming St. Paul Surplus Lines Insurance Company as a defendant, on May 18, 2001 [Doc. 13].

that the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mutual Fire Insurance Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), gives her underinsured motorist benefits from Scott & Fetzer. She makes this claim though she never worked for Scott & Fetzer and despite the fact that her husband was not acting for that company when Rosvanis hit him. She makes this claim though Scott & Fetzer Company neither owned nor explicitly insured the motorcycle Showalter was driving.

In seeking summary judgment, Defendants Hartford Indemnity and St. Paul Insurance make generally similar arguments. First, they say that their policies with the Scott & Fetzer Company required an insured to give prompt notice of any accident. Having failed to give notice for more than fourteen years, the defendants say Plaintiff Lepley failed to meet a condition precedent to recovery under the contract and therefore cannot recover underinsured motorist benefits.

Second, the defendants say that their contracts with the Scott & Fetzer Company required the insured not to prejudice the insurance companies' rights against any tortfeasor. The defendants say that Plaintiff Lepley did just that when she settled all claims against Rosvanis and released Rosvanis and her insurer without notice to the defendants. Having broken this contractual obligation, defendants argue that Lepley cannot recover underinsured motorist benefits.

In a related argument, Defendant Hartford Indemnity says its underinsured motorist coverage requires Hartford only to pay "all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle because of bodily injury caused by an accident." Because Lepley settled her claim against Rosvanis, Hartford Indemnity says

Lepley is not "legally entitled to recover damages" from Rosvanis. Hartford Indemnity contends this stops Lepley from recovering underinsured motorist benefits under the policy purchased by the Scott & Fetzer Company.

## II. Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *See Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock*

*Co.*, 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

### III. Discussion

Defendants Hartford Indemnity and St. Paul Insurance say that Plaintiff Lepley is not entitled to underinsured motorist coverage because she breached an obligation to give the insurers notice of the accident and an obligation not to impair the subrogation rights of the insurers. Responding, Lepley does not deny that she broke these requirements. Instead, Lepley says that her right to underinsured motorist coverage arises as a matter of law. Because of her coverage arising as a matter of law, Lepley argues that any contractual requirement for notice or nonimpairment of subrogation rights does not apply to her.

With her argument that contractual requirements for notice and protection of subrogation rights do not apply to her, Plaintiff Lepley says she should enjoy the benefit of the Scott & Fetzer Company's insurance contract without any of the obligations. She says that she should stand in a much better position than Scott & Fetzer, the party who paid for the coverage.

■ Still, "[i]t is well settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature." *Scott–Pontzer*, 85 Ohio St.3d at 663, 710 N.E.2d at 1119 (citing *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061, 1062 (1984)). Here, the contract, actually the Scott & Fetzer Company's contracts, agrees to condition benefits upon compliance with certain conditions. The Court can find no reason that Plaintiff Lepley, who never paid for any insurance and who never worked for Scott & Fetzer should be absolved from complying with legitimate contractual conditions. As described below, Ohio courts agree.

### A. Contractual Limitations on Underinsured Motorist Coverage Arising as a Matter of Law

■ With her argument, Plaintiff Lepley contends that all conditions of insurance policies fall away if underinsured motorist coverage insurance arises by law. Regarding the obligation to give notice to the insurer and to protect the insurer's rights against the wrongdoer, Lepley says she should be treated better than the Scott–Fetzer Company though the Scott–Fetzer Company had purchased and paid for the insurance. In *Luckenbill v. Midwestern Indemnity Co.*, 143 Ohio App.3d 501, 758 N.E.2d 301 (2001), the Ohio Court of Appeals rejected an argument similar to Lepley's, saying that when coverage arises as a matter of law,

> it may not be diminished in its scope by circumstantial exclusions which are matters the parties never contemplated. However, the right to coverage may be conditioned on compliance with provisions the parties did contemplate. Here, they agreed to condition liability coverage on the insured's compliance with certain notice requirements. His failure to comply with those requirements likewise terminated the UM/UIM liability coverage involved, notwithstanding that it was imposed by law and not by agreement.

*Id.* at 305.

In *Duriak*, the Ohio Supreme Court addressed a similar issue. *See Duriak v. Globe Am. Cas. Co.*, 28 Ohio St.3d 70, 502 N.E.2d 620 (1986) *rev'd on other grounds, Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 635 N.E.2d 317 (1994). In *Duriak*, an insured brought claims against two liability policies for damages resulting from an accident with an uninsured. One policy was primary. That policy had uninsured motorist benefits and required that the insurer be notified within one year.

The other policy was an umbrella policy without uninsured motorist benefits. But the umbrella excess policy required the insured to comply with the conditions found in the primary policy. *See id.* at 72, 502 N.E.2d at 623.

The insured in *Duriak* did not notify the primary insurer within the one-year limitation period in the primary insurance policy. The Ohio Supreme Court found that although the excess policy included uninsured coverage by operation of law, notice to the insurer was a condition precedent to such coverage: "[T]he proviso in the policy predicating recovery upon compliance with the primary insurance coverage is effective to preclude recovery from the Empire policy even if we insert uninsured motorist coverage into the policy as a matter of law." *Id.*

In *Miller*, the Ohio Supreme Court found that a contractual one-year limitation for underinsured motorist coverage claims was too short. *See Miller*, 69 Ohio St.3d at 624, 635 N.E.2d at 321. Nonetheless, the court held that contracts could properly limit the time for underinsured motorist coverage claims:

> Finally, we do not suggest that time-limitation provisions of the type at issue in this case are altogether prohibited. Consistent with our analysis, a two-year period, such as that provided for bodily injury actions in R.C. 2305.10, would be a reasonable and appropriate period of time for an insured who has suffered bodily injuries to commence an action or proceeding for payment of benefits under the uninsured or underinsured motorist provisions of an insurance policy.

*Id.* at 624–25, 635 N.E.2d at 321.

■ Similarly, when underinsured motorist coverage arises as a matter of law, subrogation is a valid condition precedent to recovery. *See Bogan v. Progressive Cas. Ins. Co.*, 36 Ohio St.3d 22, 29, 521 N.E.2d 447, 454–55 (1988) ("[A] subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such clause is therefore both a valid and enforceable precondition to [the insurer's] duty to provide underinsured motorist coverage.") *overruled in part on other grounds by McDonald v. Republic–Franklin Ins. Co.*, 45 Ohio St.3d 27, 543 N.E.2d 456 (1989); *Luckenbill*, 758 N.E.2d at 304–05 ("[A] general, predicative condition for coverage in a policy of liability insurance ... applies to UM/UIM coverage imposed by law...."); *Ohio State Grange Mut. Ins. Co. v. Shimandle*, 1994 WL 642375, at *2, *3 (Ohio Ct.App. Nov. 16, 1994) (unpublished) (noting that when the insurance policy gives the insurer subrogation rights, even if the underinsured motorist coverage "is implied by operation of law, it is subject to the same terms as the general liability coverage" and "[e]ven when the underinsured motorist coverage is 'engrafted' to the insurance policy as a result of the statute, ... the existence of that coverage is still contingent on the existence of the policy itself").

■ Though the underinsured motorist coverage is implied by law, Defendants Hartford Indemnity and St. Paul Insurance can nevertheless condition recovery on Plaintiff Lepley's compliance with certain provisions in the insurance policies.

## B. Notice

Both the Hartford Indemnity and the St. Paul Insurance policies say that an insured can bring no actions against the insurer if the insured fails to comply with the insured's obligations under the contract of insurance. For example, the St. Paul Insurance policy says:

> No action shall lie against the Company with respect to any occurrence unless, as a condition precedent thereto, the In-

sured shall have fully complied with all the terms of this Policy, nor until the amount of the Insured's obligation to pay an amount of ultimate net loss in excess of the retained limit shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

The Hartford Indemnity policy also stops actions when the insured has not complied with its obligations under the contract. As a condition precedent to recovery, both the Hartford Indemnity and the St. Paul Insurance policies require an insured to comply with notice provisions. Like the St. Paul Insurance policy, the Hartford Indemnity policy requires:

> In the event of an occurrence, written notice containing the particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstance thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable after knowledge thereof is received at the Corporate Headquarters as shown on the declarations page of this policy.

██ Hartford Indemnity's notice requirement directed the plaintiff to give notice "as soon as practicable." A provision in an insurance policy requiring the insured to give notice to the insurer "as soon as practicable," requires that the notice be given within a reasonable time in light of all the surrounding facts and circumstances. *See Ormet Primary Aluminum Corp. v. Employers Ins.*, 88 Ohio St.3d 292, 303, 725 N.E.2d 646, 655 (2000) ("[A] notice provision requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable time in light of the surrounding facts and circum-

stances."); *Ruby v. Midwestern Indem. Co.*, 40 Ohio St.3d 159, 161, 532 N.E.2d 730, 732 (1988). When the plaintiff does not give notice within a reasonable time, such "[u]nreasonable delay ... may be presumed prejudicial to the insurer ...." *Ruby*, 40 Ohio St.3d at 161, 532 N.E.2d at 732.

In *Nickschinski v. Sentry Insurance Co.*, 88 Ohio App.3d 185, 623 N.E.2d 660 (1993), the court rejected the argument that the statute of limitations for written contracts controlled when the policy required notice "as soon as possible." In *Nickschinski*, the plaintiff notified the insurer of her underinsured motorist coverage claim more than three years after the accident. The court held that her claim was barred as a matter of law, stating:

> In an insurance policy, notice "as soon as possible" means notice must be given within a reasonable time. A delay of over one year is unreasonable as a matter of law. An unreasonable delay is presumed prejudicial to the insured where no evidence is offered to the contrary.

*Id.* at 192, 623 N.E.2d 660 (internal citations omitted). *See also Fillhart v. W. Reserve Mut. Ins. Co.*, 115 Ohio App.3d 200, 202, 684 N.E.2d 1301, 1303 (1996) ("Unreasonable delay may be presumed to be prejudicial to the insurer absent evidence to the contrary.").

The accident involving Showalter occurred on September 10, 1986. Showalter died of his injuries on September 15, 1986. Plaintiff Lepley settled her claim against Rosvanis in August 1987. She did not give notice of the accident to Hartford Indemnity or St. Paul Insurance either at the time it occurred or at the time she entered the settlement with the tortfeasor. Lepley did not give notice to the defendants until she filed the complaint in this action on

March 7, 2001, more than fourteen years after the accident.

Plaintiff Lepley gives little information regarding the accident that caused Showalter's death. She alleges that Rosvanis backed her car into the path of Jack Showalter's motorcycle. After fifteen years, Defendants Hartford Indemnity and St. Paul Insurance cannot investigate or establish whether any act or omission of Showalter's contributed to the accident. After fifteen years, the defendants have scant ability to identify witnesses or secure reliable statements from witnesses.

■ Traditionally, an unreasonable delay in giving an insurer notice breaches a condition precedent to coverage. *See Am. Employers Ins. Co. v. Metro Reg'l Transit Auth.*, 12 F.3d 591, 595 (6th Cir.1993); *W. Am. Ins. Co. v. Hardin*, 59 Ohio App.3d 71, 73, 571 N.E.2d 449, 452 (1989) ("The traditional view treats proper notice as a condition precedent to coverage."); *see also Kornhauser v. Nat'l Sur. Co.*, 114 Ohio St. 24, 26, 150 N.E. 921, 921 (1926) (stating that a notice provision "constitutes a condition precedent, and when the [insured] fails to comply therewith he cannot recover . . . .").

■ "Late notice is not fatal to an insured's claim if the insurer cannot demonstrate prejudice." *Luckenbill*, 758 N.E.2d at 303–04. An unreasonable delay, however, raises a presumption of prejudice.[2] *See, e.g., Ruby*, 40 Ohio St.3d at 161, 532 N.E.2d at 732; *see also Am. Employers Ins.*, 12 F.3d at 591 (finding a two-year delay unreasonable as a matter of

law); *Beaver Excavating Co. v. U.S. Fid. & Guar. Co.*, 126 Ohio App.3d 9, 16, 709 N.E.2d 858, 862 (1998) (finding a nine-year delay unreasonable as a matter of law). Unless the plaintiff shows that she did not prejudice the defendants, the presumption remains. *See Nickschinski*, 88 Ohio App.3d at 193, 623 N.E.2d at 665 (noting that the plaintiff's failure to provide any evidence that the defendant was not prejudiced once the presumption arose rendered proper the lower court's disposition of the case on summary judgment).

■ Here, the essence of Plaintiff Lepley's claims rests on her argument that Hartford Indemnity's and St. Paul Insurance's notice provisions do not apply to coverage that arises as a matter of law. The only mention she makes of the notice requirements except arguing their inapplicability is to say that she did not violate the provisions and that the defendants did not offer evidence showing she failed to give notice. She offers no evidence to show that the more than fourteen-year delay in receiving did not prejudice the defendants. Because a presumption of prejudice arises when a delay in giving notice is unreasonable as a matter of law, and Plaintiff Lepley offers no evidence to rebut this presumption, prejudice to the defendants remains because of her unreasonable delay. Additionally, "if an insured destroys an insurer's right to subrogation by releasing the tortfeasor, the insurer is prejudiced." *Luckenbill*, 758 N.E.2d at 303–04.

Therefore, although a question regarding notice might ordinarily present a factual issue for the jury, in the present case because over fourteen years passed before Plaintiff Debbra Lepley gave notice, the delay was unreasonable as a matter of law, and no genuine issue of material fact remains as to notice.

---

**2.** In *Ormet Primary Aluminum Corp. v. Employers Insurance*, 88 Ohio St.3d 292, 725 N.E.2d 646 (2000), the Ohio Supreme Court stated that "while the question of whether the insured met the notice requirement is usually a question for the jury, an unexcused significant delay may be unreasonable as a matter of law." *Id.* at 300, 725 N.E.2d at 653.

### B. Subrogation

Defendant Hartford Indemnity says that Plaintiff Lepley's release of Rosvanis in or around August 1987 destroyed Hartford Indemnity's subrogation rights. Having destroyed these rights, Hartford Indemnity says Lepley cannot recover underinsured motorist benefits.

Defendant Hartford Indemnity's contract of insurance with the Scott & Fetzer Company required the insured to protect Hartford Indemnity's rights. Hartford Indemnity's policy [3] provides:

PART VI—CONDITIONS

. . . . .

C. OUR RIGHT TO RECOVER FROM OTHERS.

If we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

St. Paul Insurance similarly requires its insured not to prejudice its subrogation rights. The St. Paul Insurance policy provides:

The Company shall be subrogated to the extent of any payment hereunder to all the Insured's rights of recovery therefor; and the Insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure such rights.

■ Generally, "[a]n insured who settles with and releases an underinsured tortfeasor before giving her insurer notice . . . is precluded from bringing an action against her insurer for underinsured motorist benefits." *Klang v. Am. Family*

*Ins. Group*, 398 N.W.2d 49, 49, *cited with approval in McDonald v. Republic–Franklin Ins. Co.*, 45 Ohio St.3d 27, 543 N.E.2d 456 (1989).

■ In *Bogan*, the Ohio Supreme Court described the rule:

[A] subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such clause is therefore both a valid and enforceable precondition to Progressive's duty to provide underinsured motorist coverage.

*Bogan*, 36 Ohio St.3d at 29, 521 N.E.2d at 454; *see also Ferrando v. Auto–Owners Mut. Ins. Co.*, 2001 WL 1149463, at *3 (Ohio App. Sept. 4, 2001) ("The failure to give any notice or to seek the consent of the insurer to a proposed settlement when an insurance contract has a subrogation clause is a material breach of the contract. The insurer is not required to pay the claim because of the failure to give notice of the settlement offer."); *Bakos v. Insura Prop. & Cas. Ins. Co.*, 125 Ohio App.3d 548, 556, 709 N.E.2d 175, 180, (1997) ("A clause which protects rights of subrogation in an underinsured motorist provision is also valid and enforceable.")

Insurers receive this protection because "[i]t is axiomatic to the doctrine of subrogation that the rights of the insurer are no greater than those of the insured and, further, that a release . . . is an effective defense against later actions by an insurer pursuant to its right of subrogation." *Bogan*, 36 Ohio St.3d at 29–30, 521 N.E.2d at 455.

■ This subrogation right is not dependent upon an insurer showing that the tortfeasor was otherwise collectable. In *Bogan*, the Ohio Supreme Court held that the right of subrogation is a

full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right

---

**3.** Hartford Indemnity Policy No. H0082– H0086.

will be reduced to collection from the tortfeasor.... It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights will result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right.

*Id.* at 31, 521 N.E.2d 447. Destroying an insurer's right to subrogation prejudices the insurer and precludes recovery for underinsured motorist coverage. *See McDonald,* 45 Ohio St.3d at 31, 543 N.E.2d at 460 ("[A]n insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril."); *Luckenbill,* 758 N.E.2d at 305–06 ("If the insured then fails to satisfy the conditions the policy imposes ... the insured forfeits his rights under the policy to UM/UIM coverage.").

 An insured destroys an insurer's subrogation rights when the insured releases the tortfeasor from further liability. *See Ruby,* 40 Ohio St.3d at 162, 532 N.E.2d 730 at 733 ("By releasing the [tortfeasors], the Rubys destroyed Midwestern's subrogation rights."); *Bogan,* 36 Ohio St.3d at 30, 521 N.E.2d at 455 ("[T]he Bogans' grant of a full and final release to the [tortfeasors] effectively destroyed Progressive's subrogation right to recover from the [tortfeasors] any money paid to the Bogans.").

 Here, Plaintiff Lepley settled her claim against tortfeasor Rosvanis on Au-

gust 4, 1987, and she participated in the distribution of the settlement proceeds. Lepley released Rosvanis and her insurer from any liability arising out of the September 10, 1986 accident.[4] Lepley entered these agreements with neither notice to nor consent from the defendants. In so doing, Lepley destroyed the defendants' subrogation rights and prejudiced the defendants, therefore precluding recovery of underinsured motorist benefits.

### IV. Conclusion

Defendants Hartford Indemnity and St. Paul Insurance moved for summary judgment against Plaintiff Lepley. The defendants put forth generally the same arguments in support of their motions for summary judgment. Plaintiff Lepley in turn moved for partial summary judgment against both defendants regarding the same issues. Because the Court finds that, as a matter of law, Plaintiff Lepley failed to satisfy the conditions precedent to recovery under the Hartford Indemnity and St. Paul Insurance policies, no genuine issues of material fact exist. Therefore, the Court grants Hartford Indemnity's and St. Paul Insurance's motions for summary judgment and denies Plaintiff Lepley's motions for partial summary judgment.

IT IS SO ORDERED.

---

4. Plaintiff Lepley says that there is "no evidence in the record as to who has been released or the scope of such release" [Doc. 62 at 5]. Lepley does not deny the existence of a release and does not deny that she entered into one with Rosvanis and her insurer. In response to Defendant Hartford Indemnity's discovery request, Lepley merely denies the availability of the release, stating that it is "'[u]navailable at this time; however, this information may be supplemented at a later date'" [Doc. 34 at 7 n. 4]. Lepley now cites to the release's absence from the record to support her argument that the defendants offer no evidence to show that their subrogation rights were destroyed. Her failure to provide the release, while not denying its existence, and her subsequent reliance on its absence from the record do not create the type of factual issue needed to survive summary judgment.