OPINION
Plaintiff-appellant, Roger L. Heiney, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, The Hartford. For the following reasons, we affirm.
On May 16, 1998, while operating his motorcycle, appellant collided with a vehicle driven by Michael B. Nanboya. Appellant asserts that the sole cause of the collision was Mr. Nanboya's negligence in operating his vehicle. Appellant, who was injured in the collision, presented a personal injury claim to Geico Casualty Insurance Company ("Geico"), the insurer of the vehicle driven by Mr. Nanboya. On May 4, 1999, appellant settled with Geico for the limit of the automobile liability insurance policy — $12,500. In exchange for the settlement amount, appellant released all claims against Geico, Mr. Nanboya, and Charity Mwithukia, the owner of the vehicle.
At the time of the accident, appellant was employed by LCI International, Inc. ("LCI"). Appellee had issued a Special Multi-Flex Insurance Policy, that included a Business Auto Policy and Coverage Part, to appellant's employer. The parties do not dispute that this policy was in effect at the time of the accident. On May 18, 2000, appellant notified appellee of his May 16, 1998 accident, and informed appellee that he was seeking underinsured motorist coverage under his employer's policy.
On December 4, 2000, appellant filed a declaratory judgment action in the Franklin County Court of Common Pleas seeking a declaration that he was entitled to underinsured motorist coverage under the insurance policy issued by appellee to LCI. In this action, appellee does not dispute that its policy with LCI does not offer uninsured motorist or underinsured motorist coverage in Ohio. Consequently, appellee admits that such coverage arises by operation of law. See Davidson v. Motorist Mut. Ins. Co. (2001), 91 Ohio St.3d 262, 264 ("[I]f UM/UIM coverage is not offered, it becomes part of the policy by operation of law"). Additionally, appellee does not dispute that, under Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, appellant is an insured under the policy.
However, appellee asserts that appellant is not entitled to underinsured motorist coverage under the policy because he has not complied with the conditions precedent in the policy. In support of this position, appellee points to the following language.
First, Part VI of the Business Auto Policy, entitled "Conditions," reads in part:
 The insurance provided by this policy is subject to the following conditions:
 A. YOUR DUTIES AFTER ACCIDENT OR LOSS. 1. You must promptly notify us or our agent of any accident or loss. You must tell us how, when and where the accident or loss happened. You must assist in obtaining the named [sic] and address of any injured persons and witnesses.
* * *
 C. OUR RIGHT TO RECOVER FROM OTHERS. If we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.
Second, Section IV of the Business Auto Coverage Form, entitled "Business Auto Conditions," reads in part:
 The following conditions apply in addition to the Common Policy Conditions:
 A. LOSS CONDITIONS
* * *
2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". * * *
* * *
5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
 If any person organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" impair them.
The parties filed cross-motions for summary judgment and, on August 14, 2001, the trial court rendered judgment overruling appellant's motion and sustaining appellee's cross-motion. The trial court concluded that the preconditions contained in the policy could be applied to underinsured motorist coverage that was implied by law, and that appellant failed to promptly notify appellee of the accident as he was required to do by the terms of the policy. Therefore, appellant was not entitled to coverage. Appellant appeals from this judgment.
On appeal, appellant assigns the following errors:
 I. THE TRIAL COURT ERRED IN FINDING THAT NOTICE AND SUBROGATION CLAUSES FROM THE GENERAL CONDITIONS PORTION OF THE POLICY ARE APPLICABLE TO UNINSURED MOTORIST COVERAGE IMPOSED BY OPERATION OF LAW.
 II. THE TRIAL COURT ERRED IN FINDING PLAINTIFF/APPELLANT'S TIMING OF NOTICE OF THE CLAIM TO DEFENDANT/APPELLEE WAS UNREASONABLE AS A MATTER OF LAW.
 III. THE TRIAL COURT ERRED IN FINDING PLAINTIFF/APPELLANT BREACHED AN ENFORCEABLE RIGHT OF SUBROGATION SUCH THAT IT SHOULD PRECLUDE ANY RECOVERY UNDER THE CONTRACT.
 IV. THE TRIAL COURT ERRED IN FINDING THAT A RIGHT OF SUBROGATION IS A CONDITION PRECEDENT RATHER THAN A CONDITION SUBSEQUENT TO UNDERINSURED MOTORIST COVERAGE.
Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
By his first assignment of error, appellant contends that the notice and subrogation provisions contained in the general "Conditions" sections of the policy cannot apply to underinsured motorist coverage that arises through operation of law. We disagree. In an insurance policy, a notice provision can create a condition precedent, with which the failure to comply can preclude recovery of underinsured motorist insurance. Lee-Lipstreu v. Chubb Group (2001), N.D. Ohio No. 1:00CV3238. Similarly, a subrogation provision is a "valid and enforceable precondition to [the insurer's] duty to provide underinsured motorist coverage." Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, 29, overruled in part on other grounds by McDonald v. Republic-Franklin Ins. Co. (1989),45 Ohio St.3d 27.
In arguing that these conditions precedent do not apply to implied underinsured motorist coverage, appellant relies upon Demetry v. Kim (1991), 72 Ohio App.3d 692, and Scott-Pontzer, supra. In Demetry, we addressed whether exclusionary language that applied to the policy's liability coverage also applied to the underinsured motorist coverage implied by law. Pursuant to Hedrick v. Motorists Mut. Ins. Co. (1986),22 Ohio St.3d 42, exclusions to uninsured and underinsured motorist coverage can only be created by clear, unambiguous contractual language. Thus, in Demetry, we examined the insurance policy for evidence of the parties' intent to apply the liability exclusions to the underinsured motorist coverage. We reasoned that the parties could not negotiate any exclusions to the underinsured motorist coverage because they never intended that coverage to be provided by the policy. Therefore, we held that the exclusionary provisions, intended by the parties to apply solely to liability coverage, could not be impressed upon the underinsured motorist coverage. Demetry, supra, at 698.
Likewise, in Scott-Pontzer, the court addressed whether an exclusion could be applied to limit underinsured motorist coverage that arose by operation of law. Citing Demetry, the court concluded that the exclusion, which was intended to apply solely to liability coverage, did not apply to the implied underinsured motorist coverage. Scott-Pontzer, supra, at 666.
In this case, unlike in Demetry and Scott-Pontzer, the issue is whether a condition precedent, not a liability exclusion, is applicable to underinsured motorist coverage implied by law. This is an important distinction. Logically, parties to an insurance policy can never negotiate exclusions to underinsured motorist coverage that they never envisioned would exist. However, the parties to an insurance policy can negotiate conditions precedent that would apply to any and all coverages provided under the policy.
The broad application of conditions precedent to all coverages provided under an insurance policy, including coverages implied by law, is demonstrated by Duriak v. Globe American Cas. Co. (1986), 28 Ohio St.3d 70, overruled on other grounds by Miller v. Progressive Cas. Ins. Co. (1994), 69 Ohio St.3d 619. In Duriak, the plaintiff was covered under two insurance policies a primary policy, which included uninsured motorist coverage, and an excess policy, which did not include uninsured motorist coverage. The primary policy required all actions against the insurer be commenced within one year. The excess policy stated that coverage under that policy was conditioned upon compliance with the primary policy. The plaintiff failed to commence her action against the primary insurer for uninsured motorist coverage within the one-year period required by the primary policy. Although uninsured motorist coverage was read into the excess policy by operation of law, the plaintiff was precluded from recovering under the excess policy because the plaintiff failed to satisfy the general condition precedent of that policy compliance with the terms of the primary policy. Duriak, supra, at 72.
We recognize that we distinguished the holding of Duriak in Demetry. Duriak, however, is directly applicable here because it addresses the application of a condition precedent, not an exclusion, to motorist insurance implied by law.
Following the reasoning of Duriak, if an insurance policy specifies general conditions precedent that must be satisfied before an insured is entitled to any coverage, then an insured's failure to comply with those conditions precedent precludes his recovery under uninsured or underinsured motorist coverage that arises by operation of law. Since Duriak, the majority of Ohio courts addressing whether the application of a general condition precedent to insurance coverage implied by law have applied this rule. See Green v. Cincinnati Ins. Co. (2001), Huron App. No. H-01-018 ("[e]ven though operation of Scott-Pontzer principles result in UIM coverage for this claim, appellant's failure to meet policy preconditions ultimately deny her recovery"); Luckenbill v. Midwestern Indemn. Co. (2001), 143 Ohio App.3d 501, 509 ("when UM/UIM coverage is imposed by operation of law, the insured must satisfy the duties imposed on him by the policy in order to obtain the benefits of the concomitant duty to provide coverage that the law imposes on the insurer"); Ohio State Grange Mutual Ins. Co. v. Shimandle (1994), Lake App. No. 94-L-032 (holding that the subrogation clause that applied to "any payment" was applicable to the underinsured motorist coverage implied by law). See, also, Lepley v. Hartford Accident Indemn. Co. (2001), 174 F. Supp.2d 656,661 ("[t]hough the underinsured motorist coverage is implied by law, [defendants] can nevertheless condition recovery on [plaintiff's] compliance with certain provisions in the insurance policies"); Lee-Lipstreu, supra (requiring compliance with the notice provisions of an insurance contract as a condition precedent to underinsured motorist coverage that arose by operation of law).
According to the plain language of the policy at issue here, "[t]he insurance provided by this policy is subject to the following conditions." Notably, this policy language does not limit the application of the conditions precedent in the general "Conditions" sections. Although the policy offers a number of different kinds of insurance, including liability and non-liability coverages, the general "Conditions" sections apply indiscriminately to all types of insurance provided by the policy.
When underinsured motorist coverage arises by operation of law, it literally becomes "part of the contract of insurance," or another type of insurance that is offered under the policy. Abate v. Pioneer Mutual Cas. Co. (1970), 22 Ohio St.2d 161, 165. Even if the underinsured motorist coverage is "engrafted" to the insurance policy as a result of the statute, that coverage is still contingent upon the existence of the policy itself; i.e., an insurance company would not be obligated to pay benefits under the coverage unless the underlying contractual relationship exists. Thus, any payment made under an implied underinsured motorist coverage is still "pursuant to" the policy. Shimandle, supra. Consequently, as underinsured motorist coverage has become one of the insurances provided by this policy and is paid pursuant to the policy, it too must be subject to the general "Conditions" of the policy as indicated by the plain language of the policy itself.
Appellant, however, contends that the parties never intended that the general "Conditions" sections apply to underinsured motorist coverage. As proof of this contention, appellant points to the parties' failure to append the "Ohio Uninsured Motorist Coverage Bodily Injury" form to the policy. Appellant argues that, if this form had been a part of the policy, it would have amended the general "Conditions" sections of the policy to include additional conditions relating to notice and subrogation that would have applied when an insured was seeking underinsured motorist coverage. Because the form was not used, appellant reasons that the general "Conditions" section of the policy was not intended to apply to underinsured motorist coverage. We reject this argument. As we stated, the form includes conditions that would have applied in addition to the conditions contained in the general "Conditions" sections of the policy. These additional conditions contained in the form do not purport to negate the effectiveness of the general "Conditions" sections. Thus, it does not logically follow that the failure to incorporate this form into the policy is evidence that the parties never intended the general "Conditions" sections to apply generally to all types of insurance provided under the policy.
Therefore, we conclude that the conditions precedent within the insurance policy at issue apply to the underinsured motorist coverage appellant seeks. Appellant's first assignment of error is overruled.
Because appellant's second and third assignments of error are related, we will address them together. By his second assignment of error, appellant contends that his failure to give appellee notice of the accident for over two years is reasonable under the notice provision of the policy. By his third assignment of error, appellant contends that he did not breach appellee's right of subrogation.
First, appellant asserts that the insurance policy language "forgives" any failure to satisfy the notice condition. Appellant points to an endorsement entitled "Additional Terms and Conditions," which reads, in part:
Notice of Occurrence
 It is agreed that failure of any agent, servant or employee, other than the Treasurer to notify the Company of any occurrence, accident, injury, claim, suit, or loss of which he/she has knowledge shall not invalidate the insurance afforded by this policy for other Insureds hereunder or for the Named Insured.
Appellant argues that, pursuant to Scott-Pontzer, the term "Named Insured" means both the corporation and the employees of that corporation. Thus, appellant claims that "Notice of Occurrence" provision must be interpreted to mean that appellant's failure to promptly notify appellee of his accident does not invalidate the insurance afforded by the policy for other insureds, LCI or him. Appellee, however, argues that the only "Named Insured" under the policy is LCI. Thus, appellee asserts that the provision must be interpreted to mean that appellant's failure to notify appellee of his accident does not invalidate the insurance afforded by the policy for other insureds or LCI. However, it does invalidate the insurance afforded by the policy for appellant because appellant is not an "Other Insured" or the "Named Insured."
Courts enforce insurance policies using rules of construction that apply to contracts generally. Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 167. "When a contract term is defined in the policy, that definition controls what the term means." Watkins v. Brown (1994), 97 Ohio App.3d 160, 164. Courts will enforce the contract made by the parties and not modify it by ascribing finely drawn connotations to simple terms or by disregarding the simplicity or plainness of the terms used. Motorists Ins. Cos. v. BFI Waste Mgt. (1999),133 Ohio App.3d 368, 375-376 (citing 57 Ohio Jurisprudence 3d [1985] 334, Insurance, Section 275).
Here, the operative issue is who is the "Named Insured." The policy states that LCI, appellant's employer, is the "Named Insured" multiple times. Although appellant is an "insured" under the policy in accordance with Scott-Pontzer, the insured party actually named in the policy is LCI.
Further, in determining the meaning of a policy provision, a court must "read the contract as a whole giving meaning to every provision contained therein." Helberg v. National Union Fire Ins. Co. (1995),102 Ohio App.3d 679, 682. Here, we cannot give meaning to every provision of the policy if we accept appellant's interpretation of the provision. If we were to accept appellant's reading of the provision, the prompt notice condition would become meaningless.
According to appellant's interpretation of the provision, only the Treasurer's failure to notify appellee regarding accidents he was aware of would invalidate the insurance provided under the policy. An employee's utter failure to notify appellee regarding accidents he knows of, including his own, would never impair his ability to receive coverage under the contract. Thus, an employee could conceivably wait decades before notifying appellee of accidents and still receive coverage under the policy. Because this outcome would be in direct contradiction to the requirements of the prompt notice condition, we conclude that appellee's interpretation of the provision is the proper interpretation.
Second, appellant argues that the two-year delay in notifying appellee of the accident was not unreasonable and, in any event, appellee was not prejudiced by the delay, even though appellee's right to subrogation was destroyed. The policy requires appellant to notify appellee of any accident "promptly." "A provision to an insurance policy requiring `prompt' notice to the insurer requires notice within a reasonable time in light of all of the surrounding facts and circumstances." Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, 161. Prompt notice is necessary because it allows an insurer to pursue possible subrogation claims. Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000), 88 Ohio St.3d 292, 303. Unreasonable delay in notifying the insurer creates a rebuttable presumption of prejudice. TIG Ins. Co. v. O.K. Freightways, Inc. (2000), Franklin App. No. 00AP-350.
Here, appellant's accident occurred on May 18, 1998. He did not inform appellee of the accident until May 18, 2000. This two-year delay is unreasonable. See, e.g., Helman v. Hartford Fire Ins. Co. (1995),105 Ohio App.3d 617, 624 (two-year delay in informing insurer of environmental litigation was unreasonable). We do not, however, have to address the resulting presumption of prejudice because appellant acted affirmatively to prejudice appellee.
On May 4, 1999, appellant executed a release of any claims against the driver of the vehicle who struck his motorcycle, the owner of the vehicle, and the insurer of the vehicle. This release destroyed appellee's subrogation rights. The Supreme Court stated in Bogan:
 * * * It is * * * both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights will result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the present subrogation right of the injured party's insurer. [Emphasis sic.] [Id. at 31.]
An insured "who settles with and releases an underinsured tortfeasor before giving her insurer notice * * * is precluded from bringing an action against her insurer for underinsured motorist benefits." McDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, 31, overruled in part on other grounds by Fulmer v. Insura Prop. Cas. Co. (2002),94 Ohio St.3d 85. See, also, Ruby, supra, at 162 ("[i]t is well-settled in Ohio that by executing a release which precludes an insurer from exercising its subrogation rights an insured materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage"). Thus, because the settlement and release appellant entered into with the driver, owner and insurer of the vehicle destroyed appellee's subrogation right, appellee is discharged from his obligation to provide underinsured motorist coverage to appellant.
Appellant, however, argues that, prior to the rendering of the Scott-Pontzer decision, any attempt to provide notice to appellee or preserve appellee's subrogation rights would have been in vain. The Supreme Court decided the Scott-Pontzer case on June 23, 1999, about one year after appellant's accident and about one month after appellant executed the release. We disagree with appellant's argument. Nothing prevented appellant from investigating any insurance coverages his employer had, promptly notifying appellee of the accident and preserving appellee's subrogation rights. In all probability, appellant is correct in his supposition that appellee would have denied appellant coverage. Nevertheless, just as the appellant in Scott-Pontzer did, appellant could have litigated the matter. Awaiting a favorable Supreme Court decision is not a reasonable excuse for appellant's delay and failure to preserve appellee's subrogation rights. See Gidley v. Cincinnati Ins. Co. (2002), Summit App. No. 20813.
Because appellant executed the release with the tortfeasors prior to informing appellee of the accident, appellant materially prejudiced appellee's subrogation rights. Therefore, we conclude that appellee is not required to provide underinsured motorist coverage to appellant, and appellant's second and third assignments of error are overruled.
By appellant's fourth assignment of error, he argues that appellee's right of subrogation is a condition subsequent, not a condition precedent. This argument is directly contradicted by Bogan, in which the Ohio Supreme Court held that a subrogation clause is "a valid and enforceable precondition to [an insurer's] duty to provide underinsured motorist coverage." (Emphasis added.) Bogan, supra, at 455 (construing a subrogation clause constructed and phrased similarly to those at issue here). Therefore, appellant's fourth assignment of error is overruled.
For the foregoing reasons, we overrule appellant's four assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.