ESTATE OF Tasha TAYLOR
et al., Plaintiffs,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY
et al., Defendants.

No. 1–00–02397–AA.

United States District Court,
N.D. Ohio.
Eastern Division.

Sept. 19, 2002.

Young, David L. Lester, Ulmer & Berne, Cleveland, OH, for Defendants.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

This is a breach of insurance contract case, in which the plaintiffs, the Estate of Tasha Taylor, Ernesha Walker, Edna Taylor, and Michael Taylor, seek to recover monetary damages arising out of an automobile accident involving Tasha Taylor, under insurance policies issued by the defendant, the St. Paul Fire and Marine Insurance Company ("St.Paul").[1] This Court has previously granted St. Paul's motion to bifurcate and stay the plaintiffs' bad faith claim. *See* Doc. # 31. Now before the Court are the parties' cross-motions for summary judgment (Docs.# 34, 35) as to the issue of coverage only. For the following reasons, this Court grants the plaintiffs' motion (Doc. # 34) and denies St. Paul's motion (Doc. # 35).

### I. Background

On August 24, 1995, Tasha Taylor was a passenger in a motor vehicle traveling westbound on Interstate 90 in Sheridan, New York, when the driver fell asleep at the wheel. The vehicle left the highway and collided with a concrete culvert. Taylor suffered severe injuries, including brain injuries and a coma, and ultimately, on August 10, 1998, died as a result of these injuries. Edna Taylor is Tasha Taylor's mother, Ernesha Walker is Tasha Taylor's minor daughter, and Michael Taylor is Tasha Taylor's brother. At the time of the accident, Tasha Taylor, Edna Taylor, Michael Taylor, and Ernesha Walker lived together in Cleveland, Ohio.

Christian R. Patno, Garson & Associates, David L. Meyerson, Garson & Associates, James A. DeRoche, Garson & Associates, Cleveland, OH, for Plaintiffs.

D. John Travis, Gallagher, Sharp, Fulton & Norman, Paul D. Eklund, Davis &

1. Defendant Hartford Fire Insurance Company ("Hartford") reached a settlement with the plaintiffs, and all claims against it have been dismissed with prejudice by stipulation of the parties. *See* Doc. # 43.

At the time of the accident, Edna Taylor was an employee of University Hospitals Health System, Inc. and/or University Hospitals of Cleveland ("University Hospitals"). University Hospitals was insured by Hartford for automobile liability. University Hospitals was also insured by St. Paul under two policies, Policy No. HK03400057, entitled "Health Care Commercial General Liability Protection" ("general liability policy"), and Policy No. 566UH0045, entitled "Umbrella Excess Liability Policy" ("umbrella excess liability policy"). The Estate of Tasha Taylor brought suit against the driver of the automobile in the Cuyahoga County Court of Common Pleas, and, on November 25, 1998, settled its claims for $600,000.

On August 28, 2000, the plaintiffs filed this action against St. Paul and Hartford in the Cuyahoga County Court of Common Pleas, alleging that they are insured under policies issued by the defendants, that those policies extend underinsured and/or uninsured motorist ("UIM") coverage to them pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and that they are entitled to recover under those policies for the lost society, services, affection, guidance, inheritance, support, earnings, companionship, advice, instruction, love, and counsel of Tasha Taylor and because of the defendants' bad faith. This complaint was apparently the first notice to the defendants of the plaintiffs' claims under the policies. The defendants removed the case to this Court on September 19, 2000. On May 18, 2001, this Court granted the defendants' motion to bifurcate the proceedings, to stay the plaintiffs' bad faith claim, and to limit discovery to the issue of coverage. The plaintiffs subsequently settled their claims against Hartford for $400,000. The plaintiffs and St. Paul have now filed cross-motions for summary judgment as to the issue of UIM coverage under the St. Paul policies.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "ma-

terial" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 2512. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### III. Analysis

#### A. Subject Matter Jurisdiction

■ Although jurisdiction was not addressed by the parties, "federal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them." *In re Wolverine Radio Co.,* 930 F.2d 1132, 1137 (6th Cir.1991). There is arguably some question whether this case constitutes a direct action on a policy of liability insurance under 28 U.S.C. § 1332(c)(1). In a direct action on a policy of liability insurance, an insurer is deemed to have the citizenship of its insured, destroying diversity in most such cases. The question whether suits seeking recovery pursuant to *Scott–Pontzer* and related cases constitute direct actions on a policy of liability insurance has created substantial uncertainty in this jurisdiction. On October 30, 2001, this Court held that *Scott–Pontzer* cases do not constitute direct actions on a policy of liability insurance, and that diversity is therefore not destroyed under section 1332(c)(1). *Redmon v. Sumitomo Marine Mgmt. (U.S.A.), Inc.,* 179 F.Supp.2d 787 (N.D.Ohio 2001) (Aldrich, J.). At last count, seven courts have disagreed, and have held that jurisdiction is lacking. *Butler v. Zurich Am. Ins. Co.,* 184 F.Supp.2d 695 (N.D.Ohio 2002) (Katz, J.); *Stubbins v. Nationwide Agribusiness Ins. Co.,* 181 F.Supp.2d 805 (N.D.Ohio 2002) (Carr, J.); *Comella v. St. Paul Mercury Ins. Co.,* 177 F.Supp.2d 704 (N.D.Ohio 2001) (O'Malley, J.); *Reese v. Fid. & Guar. Ins. Underwriters, Inc.,* Case No. 1:01CV2633 (N.D.Ohio Mar. 22, 2002) (Oliver, J.); *Monahan v. Am. States Ins. Co.,* Case No. 5:00CV1191 (N.D.Ohio Dec. 20, 2001) (Economus, J.); *Kohus v. Hartford Ins. Co.,* Case No. 1:01CV1179, 2001 WL 1850889 (N.D.Ohio Nov. 19, 2001) (Matia, J.); *Kormanik v. St. Paul Fire & Marine Ins. Co.,* 208 F.Supp.2d 824 (N.D.Ohio 2001) (Polster, J.). On the other hand, five courts besides this one have found that section 1332(c)(1) does not apply to destroy diversity in this situation. *Johnson v. Fireman's Fund Ins. Co.,* Case No. 1:01CV1063 (N.D.Ohio Jan. 15, 2002) (Nugent, J.); *Fid. & Guar. Ins. Underwriters, Inc. v. Nocero,* Case No. 1:01CV397, 2001 WL 1792448 (N.D.Ohio Dec. 13, 2001) (Gaughan, J.); *Martin v. Midwestern Indemnity Co.,* Case No. 5:00CV1864 (N.D.Ohio Nov. 27, 2001) (Dowd, J.); *Bliss v. Nat'l Union Fire Ins. Co.,* Case No. 1:01CV2046 (N.D.Ohio Nov. 1, 2001) (Wells, J.); *see also Lepley v. Hartford Accident & Indem. Co.,* 174 F.Supp.2d 666 (N.D.Ohio 2001) (assuming jurisdiction) (Gwinn, J.). The Sixth Circuit has not yet had the opportunity to provide any guidance on this issue. *See Comella v. St. Paul Mercury Ins. Co.,* 33 Fed.Appx. 737, 2002 WL 467940 (6th Cir. 2002) (dismissing, pursuant to 28 U.S.C. § 1447(d), the appeal of a remand under section 1332(c)(1)). The Court therefore

finds, for the reasons stated in *Redmon*, that this case does not constitute a direct action against the insurer of a policy of liability insurance within the meaning of section 1332(c)(1), and that the Court has subject matter jurisdiction in this case.

## B. Coverage

### 1. Insureds Under the Umbrella Excess Liability Policy

In *Scott–Pontzer*, the Ohio Supreme Court suggested that the first inquiry in a case such as this one should focus on whether the plaintiff is an "insured" under the policy in question. *Scott–Pontzer*, 710 N.E.2d at 1118 ("If we find Pontzer was not an insured under the policies, then our inquiry is at an end."). The plaintiffs no longer argue that they are insureds under the general liability policy. The umbrella excess liability policy's declarations page lists only University Hospitals as the named insured. Under the heading "PERSONS OR ENTITIES INSURED," however, the policy extends coverage "subject to the terms and conditions of this Policy, [to] any additional Insured included in the underlying insurance listed in Schedule A but only to the extent that insurance is provided to such additional Insured thereunder." One of the policies listed in Schedule A is an automobile liability policy issued by Hartford. That policy contains an uninsured motorist endorsement that defines "WHO IS AN IN-SURED" as "You," and "If you are an individual, any 'family member.'" Furthermore, the endorsement includes in the definition of "Uninsured motor vehicle" any "underinsured motor vehicle."

■ Under *Scott–Pontzer*, Edna Taylor is clearly an insured under the St. Paul policy. In *Scott–Pontzer*, Pontzer was an employee of Superior Dairy, Inc., which had taken out both a commercial automobile liability policy and an umbrella excess liability policy. Both policies listed Superi-

or Dairy as the named insured. Under the definition of "Who is an insured," both policies listed "you," which the court assumed arguendo referred only to Superior Dairy. *Id.* at 1119. Nonetheless, the court held that "[i]t would be contrary to previous dictates of this court for us now to interpret the policy language at issue here as providing underinsured motorist insurance protection solely to a corporation without any regard to persons.... Rather, it would be reasonable to conclude that 'you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons." *Id.* Because Ohio's UIM requirement is intended to protect persons, not vehicles, the court concluded that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons—including to the corporation's employees." *Id.* Thus, Edna Taylor, as an employee of the corporate named insured under the St. Paul policy, is an insured under the policy for purposes of UIM coverage.

■ It is undisputed that Michael Taylor, Tasha Taylor, and Ernesha Walker all resided with Edna Taylor at the time of the accident. In *Ezawa v. Yasuda Fire & Marine Ins. Co.*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999), the Ohio Supreme Court reversed a court of appeals decision denying UIM coverage to the minor son of an employee whose employer had taken out a UIM policy. The employer was the named insured under the policy, which, under the heading "WHO IS AN IN-SURED," listed both "you" and "If you are an individual, any 'family member.'" *Ezawa v. Yasuda Fire & Marine Ins. Co.*,

No. 97APE10–1343, 1998 WL 353871, at *2 (Ohio Ct.App.1998). The court of appeals held that, even if "you" were interpreted to include employees of the named corporate insured (a proposition unclear before *Scott–Pontzer* was decided), the "If you are an individual" limitation meant that family members were only insured if the *named* insured were an individual, which, in that case as here, it was not. *Id.* at *4. The Ohio Supreme Court disagreed and reversed without opinion on the authority of *Scott–Pontzer*. *Ezawa*, 715 N.E.2d at 1143. Thus, under *Ezawa*, it is clear that Michael Taylor, Tasha Taylor, and Ernesha Walker are all insureds under the Hartford policy, which defines "WHO IS AN INSURED" in exactly the same language as that used in the policy at issue in *Ezawa*. That Tasha and Michael Taylor were adult children at the time of the accident is irrelevant, because the Hartford policy defines "Family member" as "a person related to you by blood, marriage or adoption who is a resident of your household ...."

■ This Court must therefore determine whether Michael Taylor, Tasha Taylor, and Ernesha Walker are insureds under Section V(b)(3) of the umbrella excess policy by virtue of their status as insureds under the Hartford policy.[2] Under the plain language of the policy, they are. Section V(b)(3) provides that "any additional Insured included in the underlying insurance listed in Schedule A" is also insured under the umbrella excess policy, "but only to the extent that insurance is provided to such additional Insured thereunder." Coverage is not limited, for example, only to named insureds of the underlying policies, but rather extends to "any" insured "included" in an underlying policy. Michael Taylor, Tasha Taylor, and Ernesha Walker are insureds "included" in the underlying Hartford policy. The only limitation under section V(b)(3) is that insureds under underlying policies are only insureds under the St. Paul policy "to the extent that insurance is provided" under the underlying policy. Because, under *Ezawa*, the Hartford policy affords UIM coverage to these three plaintiffs, Section V(b)(3) provides that they are insured to the same extent under the St. Paul policy.

St. Paul appears to argue that the umbrella excess liability policy does not incorporate any of the UIM coverage provisions in the endorsement to the Hartford policy, but rather can only be read as incorporating additional insureds under the automobile liability coverage portion of the Hartford policy. St. Paul fails to point to any language in the policy that would support such a limitation or that would otherwise contradict the plain meaning of Section V(b)(3). Instead, St. Paul relies on a portion of the *Scott–Pontzer* opinion, which, cited out of context, states that "any language in the ... umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." *Scott–Pontzer*, 710 N.E.2d at 1120 (citing *Demetry v. Kim*, 72 Ohio App.3d 692, 595 N.E.2d 997, 1001 (1991)). This language, however, is found in the final portion of the court's opinion, in which the court, relying on the well-

---

**2.** St. Paul attempts to distinguish *Scott–Pontzer* and *Ezawa* on the grounds that both of those cases involved coverage under a policy that contained family-oriented language, while St. Paul's umbrella excess policy does not contain such language. St. Paul also highlights numerous provisions of the policy under which the plaintiffs do not qualify as insureds. While apparently true, these assertions have absolutely no bearing on the question before the Court. The plaintiffs now argue only that they are insureds under section V(b)(3) of the umbrella excess policy because they are insureds under the underlying Hartford policy.

settled maxim that "[i]n the construction of insurance contracts, '[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof,'" held that a limitation on coverage in an umbrella excess liability policy applied only to excess liability coverage, and not to UIM coverage imposed by operation of law. *Id.* (quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1386 (1988) (second internal quotation omitted)).

The Ohio Supreme Court's analysis of this issue has little bearing on the question of who is an insured under the policy at issue, and, to the extent that it is relevant to that question at all, it militates in favor of coverage. In this portion of the *Scott–Pontzer* opinion, the Ohio Supreme Court made clear that insurers who fail to offer UIM coverage as required by Ohio law should not reap the benefits provided by exclusions and limitations that were bargained for without reference to UIM coverage. In an effort to stand this analysis on its head, St. Paul strenuously urges this Court to use "common sense" in ascertaining the extent of coverage under its umbrella excess liability policy, citing some general language in the recent Ohio Supreme Court case of *Davidson v. Motorists Mut. Ins. Co.*, 91 Ohio St.3d 262, 744 N.E.2d 713 (2001), in which the court noted that "[c]ommon sense alone dictates that neither the insurer nor the insured bargained for or contemplated that such homeowner's insurance would cover personal injuries arising out of an automobile accident that occurred on a highway away from the insured's premises." *Id.* at 719. St. Paul suggests that the parties to this case would never have contemplated that St. Paul would potentially have to afford coverage to any employee of University Hospitals whose adult child suffered injuries in an accident in no way related to the employer's business.

While such a result could appear contrary to common sense, it is plainly in keeping with the policies and principles underlying the *Scott–Pontzer* case—protecting Ohio citizens by assuring that insurers fulfill their statutory duty to offer UIM coverage, and placing the burden of carefully drafting policy language on the drafter/insurer—both of which St. Paul ignores in favor of its "common sense" intent of the parties approach. *See Scott–Pontzer,* 710 N.E.2d at 1120 ("We realize that the conclusion reached herein may be viewed by some as a result that was not intended by the parties to the insurance contracts at issue. Nonetheless, we believe that to adopt appellees' position in this matter would clearly produce absurd results."); *see also id.* at 1119 ("We recognize that insurers can draft policy language that provides varying arrays of coverage to any number of individuals. However, in drafting contracts of insurance, insurers must do so with language that is clear and unambiguous and that comports with the requirements of the law.... Courts universally hold that policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured."). Extension of coverage to Edna Taylor's family is a byproduct of the fact that, by failing to live up to its statutory obligations, St. Paul also forfeited the opportunity to draft specific language limiting the scope of such coverage. Thus, this Court is constrained by the plain language of Section V(b)(3) of the umbrella excess policy, which provides that Michael Taylor, Tasha Taylor, and Ernesha Walker, as insureds "included in" the UIM provisions of the underlying Hartford policy, are also insureds under the umbrella excess policy.

## 2. UIM Coverage

■ Although the Hartford policy contains an explicit UIM provision, the St. Paul umbrella excess liability policy does not. St. Paul does not dispute that it did not make any offer of UIM coverage. Under Ohio law, excess liability insurance must comport with Ohio Rev.Code § 3937.18 and, thus, UIM coverage must be tendered. *Duriak v. Globe Am. Cas. Co.*, 28 Ohio St.3d 70, 502 N.E.2d 620, 622–23 (1986). Failure by the insurer to offer such coverage results in the provision of such coverage by operation of law. *Gyori v. Johnston Coca–Cola Bottling Grp.*, 76 Ohio St.3d 565, 669 N.E.2d 824, 827 (1996). "Absent any showing that underinsured coverage was offered and rejected, such coverage is included in the policy." *Scott–Pontzer*, 710 N.E.2d at 1120. The umbrella excess liability policy therefore provides UIM coverage.

## 3. Coverage for Nonbodily Injuries

■ Because Tasha Taylor was insured under the umbrella excess policy, since that policy provided UIM coverage, and because Tasha Taylor suffered bodily injuries and ultimately death as a result of the accident, the estate of Tasha Taylor has clearly suffered recoverable damages. St. Paul, however, argues that the other plaintiffs, none of whom suffered bodily injury, are not entitled to recover under the policy. In *Moore v. State Auto. Mut. Ins. Co.*, 88 Ohio St.3d 27, 723 N.E.2d 97 (2000), the Ohio Supreme Court held that an insurer may not, consistent with the terms of Ohio Rev.Code § 3937.18, limit recovery under a UIM policy to damages suffered as a result of bodily injuries. In *Moore*, the plaintiff, Alice Moore, sought to recover under her own automobile liability insurance for damages she suffered as a result of her son's death in an automobile accident caused by the negligence of an underinsured motorist. Moore had sustained no bodily injury as a result of the accident. Moore's automobile liability policy provided UIM coverage, but limited that coverage to insureds who sustained bodily injury. *Id.* at 100. At the time *Moore* was decided, Ohio Rev.Code § 3937.18 provided in part:

> (A) No automobile liability ... policy of insurance ... shall be delivered or issued for delivery in this state ... unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
>
> > (1) Uninsured motorist coverage, which ... shall provide protection for bodily injury or death ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.

*Id.* at 100–01 (quoting Ohio Rev.Code § 3937.18). The insurer argued that the phrases "suffered by such persons" and "suffered by any person insured under the policy" modified the phrases "bodily injury or death" and "bodily injury, sickness, or disease, including death" respectively, and that these amendments to the UIM statute explicitly authorized insurers to limit UIM coverage to bodily injuries suffered by an insured. The plaintiff, on the other hand, argued that the "suffered by ..." phrases modified "loss" and "damages" respectively, and that the statute therefore provided no authority for such a limitation in a UIM policy. The Ohio Supreme Court found that the statute was ambiguous and, noting that "[t]he purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated," further found that the insurer's construction of the statute would

conflict with both that purpose and the purpose of Ohio's wrongful death statute, which allows family members to recover for damages suffered as the result of a relative's wrongful death. *Id.* at 102. The court therefore held that the statute "does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." *Id.*

St. Paul first attempts to distinguish *Moore,* arguing that it only applies where the policy at issue is itself an automobile liability policy, not an umbrella excess liability policy pursuant to which UIM coverage arises by operation of law. Nothing in *Moore* supports this distinction, however, and St. Paul can point to no other case in support of its position. Indeed, the *Moore* court forbade insurers from limiting UIM coverage to bodily injuries suffered by the insured even in those cases where the insurer has complied with Ohio law by offering UIM coverage. An insurer who complies with the statute is permitted to bargain for any number of limitations on that coverage as long as those limitations are not otherwise foreclosed under Ohio law. Under *Moore,* however, a bodily injury limitation *is* forbidden under Ohio law. If such a limitation is forbidden even where an insurer has complied with Ohio law by offering UIM coverage and where the parties have bargained for such a limitation, it is clearly forbidden where the insurer has failed to offer UIM coverage and thus has not even considered bargaining for such a limitation. Any other conclusion would put the insurer who fails to comply with the statute in a better position than those insurers who carefully comply by offering UIM coverage.

 St. Paul also argues that *Moore* has been legislatively overruled by Senate Bill 267, which changed "provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons" to "offered to persons insured under the policy due to bodily injury or death suffered by such insureds." Ohio Rev.Code Ann. § 3937.18(A) (Supp.2000). The amendment was specifically intended "to supersede the holding[ ] of the Ohio Supreme Court in ... *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, that division (A)(1) of section 3937.18 of the Revised Code does not permit an insurer to limit uninsured or underinsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, death or disease for any other insured to recover from the insurer." *Id.* hist. n. This amendment is no help to St. Paul, however, for three reasons. First, in this case an insured, namely Tasha Taylor, *did* suffer bodily injury for which another insured seeks to recover. The amendment and accompanying historical note express no intent to overrule *Moore* in this type of situation. Second, even if the amendment did overrule *Moore* where, as here, an insured has suffered bodily injury, the amendment merely *permits* an insurer to limit UIM coverage to bodily injuries, it does not require that UIM coverage always be limited to bodily injuries. Where, as here, an insurer has failed to offer UIM coverage, it has also clearly failed to include such a limitation. Finally, this amendment was effective September 21, 2000. It is well-settled under Ohio law that "when a contract for automobile liability insurance is entered into or renewed, the statutory law in effect at the time of contracting or renewal defines the scope of underinsured motorist coverage." *Ross v. Farmers Ins. Grp. of Cos.,* 82 Ohio St.3d 281, 695 N.E.2d 732, 736 (1998). The policy at issue became effective on July 1, 1995. Since, under *Duriak,* umbrella excess policies are treated like automobile liability insurance for purposes of the UIM requirement, there is no reason *Ross*

should not apply where UIM coverage arises by operation of law when an umbrella excess policy is entered into. The 2000 amendments are therefore irrelevant to this case.[3] *Moore* controls the issue of recovery for nonbodily injury, and the umbrella excess policy affords all plaintiffs coverage for damages they suffered as a result of the accident, whether bodily or nonbodily.

## C. Restrictions of Coverage

St. Paul's alternative argument is that, even if the umbrella excess policy affords the plaintiffs UIM coverage, the plaintiffs are barred from recovering under the policy because they failed to give timely notice of their claim and, in doing so, they prejudiced St. Paul's subrogation rights and failed to satisfy a condition precedent to coverage. It appears that the plaintiffs first notified St. Paul of their claim when they filed their complaint, which was served on St. Paul on August 28, 2000. The accident occurred on August 24, 1995, and the estate of Tasha Taylor settled its tort liability claims against the owner and operator of the alleged underinsured automobile for $600,000 on November 25, 1998. The umbrella excess liability policy provides:

> C. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT
>
> (1) In the event of an occurrence, which appears likely to involve this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.
>
> . . . . .
>
> (3) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury ... with respect to which insurance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.
>
> . . . . .
>
> G. SUBROGATION
>
> The Company shall be subrogated to the extent of any payment hereunder to all the Insured's rights of recovery thereof; and the Insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure such rights.

The policy also provides that "[n]o action shall lie against the Company with respect to any occurrence unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy." St. Paul argues that by allowing five years to pass between the accident and provision of notice, the plaintiffs did not "cooperate with the Company" or do "everything necessary to secure [St. Paul's subrogation] rights" and "nothing after

**3.** The Court further notes that a more recent amendment, 2001 S 97, has drastically altered the law of UIM coverage in Ohio. Insurers are no longer required to offer UIM coverage, thus eliminating the possibility of such coverage arising by operation of law in policies like the one at issue in this case. Ohio Rev.Code Ann. § 3937.18 (2002). These amendments, however, became effective on October 31, 2001, and, because they were not made retroactive, are therefore also irrelevant to this case.

loss to prejudice [those subrogation] rights."

 The plaintiffs respond that *Scott–Pontzer* explicitly rejected this type of restriction of coverage. In *Scott–Pontzer*, the Ohio Supreme Court held that, where UIM coverage arose by operation of law in an umbrella excess liability policy, and where a provision of that policy restricted coverage to employees acting within the scope of employment, the restriction was inapplicable to the UIM coverage arising by operation of law. *Scott–Pontzer*, 710 N.E.2d at 1120. The court concluded that "any language in the . . . umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage." *Id.* (citing *Demetry v. Kim*, 72 Ohio App.3d 692, 595 N.E.2d 997, 1001 (Ohio Ct.App.1991)). Relying on this language, the plaintiffs argue that the subrogation rights and notice provisions of the policy were only intended to restrict excess liability coverage, not UIM coverage, which this Court has found arises by operation of law.

St. Paul relies on *Luckenbill v. Midwestern Indem. Co.*, 143 Ohio App.3d 501, 758 N.E.2d 301 (2001), in which the Second Appellate District of the Ohio Court of Appeals held that late notice of a claim prejudiced an insurer's subrogation rights, and that preservation of subrogation rights was a condition to UIM coverage even where that coverage arose by operation of law in a homeowner's liability policy. The court noted that exclusions from coverage and conditions for coverage are distinct concepts; while the former generally carve out exceptions for specific factual scenarios in which coverage will not apply, the latter generally are requirements that must be fulfilled before the policy as a whole applies at all. Thus, the court concluded that "a general, predicative condition for coverage in a policy of liability insurance, such

as a notice provision, applies to UM/UIM coverage imposed by law for the benefit of the insured to the same extent that it applies under the policy's terms for liability coverage." *Id.* at 305; *see also Lepley*, 174 F.Supp.2d at 661 (citing *Luckenbill* for this proposition). The Fifth Appellate District of the Ohio Court of Appeals has reached the opposite conclusion, however, relying on the same precedent cited by the *Scott–Pontzer* court. *Myers v. Safeco Ins. Co.*, No. 99CA00083, at 2000 WL 329800 at *6 (Ohio Ct.App. Feb. 18, 2000) (citing *Demetry*, 595 N.E.2d at 1001), *rev'd on other grounds*, 91 Ohio St.3d 333, 744 N.E.2d 1162 (2001).

Although, as *St. Paul* points out, the *Myers* court did not appear to consider the distinction between exclusions and conditions, it is also true that the *Luckenbill* court did not cite to *Scott–Pontzer* at all. The *Scott–Pontzer* court did not articulate its rule in terms of exclusion or conditions, but rather used the phrase "any language . . . restricting insurance coverage." *Scott–Pontzer*, 710 N.E.2d at 1120. Thus, the *Scott–Pontzer* court arguably obliterated the distinction between exclusions and conditions where UIM coverage arises by operation of law, since *any* language restricting insurance coverage in such a policy only applies, under *Scott–Pontzer*, to liability coverage. This Court finds that the notice and subrogation provisions of the policy constitute "language . . . restricting insurance coverage" as that phrase was used by the *Scott–Pontzer* court, and that these provisions were therefore only intended to apply to liability coverage, not to UIM coverage, which arises by operation of law.

As the plaintiffs note, the language of the subrogation provision itself supports the conclusion that that clause was intended only to apply in the liability context. In discussing apportionment of "[a]ny

amount ... recovered," the provision provides: "Any interest (including the insureds) having paid an amount in excess of the retained limit plus the limit of liability hereunder shall be reimbursed first to the extent of actual payment. The company shall be reimbursed next to the extent of its actual payment hereunder. If any balance then remains unpaid, it shall be applied to reimburse the insured or any underlying insurer, as their interest may appear." This language, especially in providing for apportionment to the insured, clearly contemplates payment of liability insurance and makes little sense in the context of UIM coverage. At the very least, the ill fit between this language and provision of UIM coverage renders the language ambiguous, and this Court construes this ambiguous language against the insurance company and in favor of the insured. *Weiker v. Motorists Mut. Ins. Co.*, 82 Ohio St.3d 182, 694 N.E.2d 966, 968 (1998) ("[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.") (internal citation omitted). Thus, this Court finds that the notice and subrogation provisions of the policy were not intended to apply in the UIM context and therefore do not bar the plaintiffs' suit.

The Court further notes that, even if the *Scott–Pontzer* court's reasoning extended only to exclusions or limitations and not to conditions precedent, this Court still would not find the plaintiffs' suit barred by the notice and subrogation provisions, because the policy is ambiguous as to whether those provisions were intended to be exclusions/limitations or conditions precedent. To be sure, they appear in a section of the policy entitled "CONDITIONS," not in the section entitled "EXCLUSIONS." This placement is not determinative, however, since a number of provisions appear in the conditions section that are not true conditions precedent to coverage. For example, the provisions setting out the insurer's right to appeal at its own expense, the applicable premium, the three-year term of the policy, and both parties' rights to cancel the policy have little or no bearing on when or whether an insured can bring suit on the policy, and are not typical of conditions precedent to coverage. Furthermore, neither the notice provision nor the subrogation provision uses the specific language "condition precedent" or even the word "condition" on its own, while an unrelated provision under the same "CONDITIONS" heading specifically uses the phrase "as a condition precedent thereto." It is therefore clear that the insurer could have used more specific language either in the heading of this section of the policy or preferably in the notice and subrogation provisions themselves, if it had intended those provisions to be true conditions precedent to coverage. As a result, the Court finds that the policy is ambiguous in this respect. The Court construes the ambiguous language against the insurer and in favor of coverage and concludes that the notice and subrogation provisions are not conditions precedent to coverage, but mere limitations which, under *Scott–Pontzer,* do not apply to UIM coverage arising by operation of law.

■ Finally, the Court finds that even if these provisions were conditions precedent to coverage or limitations on UIM coverage, the plaintiffs did not violate their terms and St. Paul has not been prejudiced in any way by the plaintiffs' actions. The notice provision provides that, in the event of an occurrence "which appears likely to involve this Policy," written notice must be given to the insurer and relevant information must be provided "as soon as practicable." It further requires that the insured "cooperate" with the insurer. The Court finds that, as a matter of law, the

plaintiffs complied with these requirements. The accident occurred on August 24, 1995 and the settlement was reached on November 25, 1998. *Scott–Pontzer* was decided on June 23, 1999, *Ezawa* was decided on September 22, 1999, and *Moore* was decided on February 16, 2000. The plaintiffs had no reason to believe that they could maintain this action before these cases were decided. They filed suit on August 28, 2000. It was not unreasonable for the plaintiffs to settle with the tortfeasor without providing notice to St. Paul when they could not have known that St. Paul's rights could be affected by the settlement. The notice provision requires written notice only in the event of an occurrence "which appears likely to involve" the policy. In 1995, and even in 1998, the accident was not an occurrence that could have appeared likely to involve the policy. As one Ohio court has noted, since "requirements in an insurance policy for notice to the insurer of accidents refer only to accidents which could cause a loss under the policy, delay in giving notice of an accident is excused while legal precedent appears to foreclose any claim." *West Am. Ins. Co. v. Hardin,* 59 Ohio App.3d 71, 571 N.E.2d 449 syllabus (Montgomery Cty. Ct. Comm. Pl.1989). Furthermore, the short period between the decisions in *Ezawa* and *Moore,* on which the plaintiffs rely heavily in this action, and institution of this lawsuit was reasonable. St. Paul has produced no evidence of any purposeful or otherwise unreasonable delay. The notice provision therefore does not bar the plaintiffs' suit.

Likewise, the subrogation provision requires that the insured "do nothing after loss to prejudice" St. Paul's subrogation rights. This language suggests that the insured must not purposefully do something to prejudice subrogation rights. The provision does not say, for example, that the insured must do nothing "that may" prejudice St. Paul's rights. Use of the word "to" suggests that knowledge, at least of a constructive nature, is required; because *Scott–Pontzer, Ezawa,* and *Moore* had not been decided when the plaintiffs settled their tort claims, such knowledge could not have existed in this case. Furthermore, St. Paul has not demonstrated that it suffered any prejudice. The only evidence in the record in this regard suggests that the estate of Tasha Taylor settled the tort claims for $600,000. Although the tortfeasor's policy limit was $1,000,000, it appears that only $600,000 was available because of the claims of three other passengers in the automobile. Because the estate of Tasha Taylor settled its tort claims for the full amount available under the policy, St. Paul suffered no prejudice by missing the opportunity to exercise its subrogation rights. *See Martin v. Liberty Mut. Ins. Co.,* 187 F.Supp.2d 896, 904 & n. 6 (N.D.Ohio 2001) (rejecting the argument that an insurer's inability to exercise its subrogation rights barred plaintiffs' claims where the plaintiffs settled their tort claims before *Scott–Pontzer* was decided and finding no prejudice to the insurer). Thus, even if subrogation were a condition precedent to coverage that applied to the UIM coverage arising by operation of law in this case, the Court finds that none of the plaintiffs violated the terms of that provision, that St. Paul has suffered no prejudice, and that the subrogation provision therefore does not bar the plaintiffs' suit.

## CONCLUSION

For the foregoing reasons, this Court grants the plaintiffs' motion for summary judgment and denies St. Paul's motion for summary judgment. A status conference is scheduled for July 12, 2002 at 2:30 p.m., at which time the Court will set a new case management schedule regarding the plain-

tiffs' bad faith claim and the issue of damages.

IT IS SO ORDERED.