OPINION
{¶ 1} Third-party plaintiff/appellant, Thomas Kirby, Administrator of the estate of Elaine Current ("Estate"), appeals the decision of the Warren County Court of Common Pleas granting the summary judgment motion of third-party defendant/appellee, Insurance Company of the State of Pennsylvania ("ISOP"), and the directed verdict of third-party defendant/appellee, Lakefront Lines, Inc., in an underinsured motorist claim. We affirm the decision in part, reverse in part and remand for further proceedings.
 {¶ 2} Elaine Current was an employee of Lakefront Lines, Inc. in 1995. On June 13, 1995, while driving a non-Lakefront owned car and not in the course of employment, she was killed in an automobile accident. Another driver, Nicholas Smith, traveled left-of-center and struck Current's automobile head-on.
 {¶ 3} On August 3, 1995, Thomas Kirby was appointed administrator of Current's estate. Eventually, the Estate settled with Nicholas Smith's insurer, accepting his $100,000 policy limits and executing a release of all further claims against him.
 {¶ 4} On October 31, 1998, the Estate filed a lawsuit against Current's insurer, Pioneer Insurance Company, for underinsured motorist ("UIM") benefits. The trial court entered summary judgment in favor of Pioneer, and we affirmed the decision.
 {¶ 5} On September 1, 2000, Pioneer filed a declaratory judgment action against the Estate. Thereafter, the Estate filed a third-party complaint against ISOP seeking UIM coverage. At the time of the accident, Lakefront, Current's employer, held an ISOP automobile insurance policy naming Lakefront as the insured. It contained UIM coverage with a limit of $25,000 and liability limits of $10 million. The Estate later filed a third-party complaint against Lakefront, claiming that they breached their duty to appellant to notify ISOP of Current's death.
 {¶ 6} The Estate filed a summary judgment action against ISOP, and ISOP filed a cross motion for summary judgment. On May 3, 2002, the trial court found that the Estate breached the insurance policy's notice provision and entered summary judgment in favor of ISOP.
 {¶ 7} The Estate filed a declaratory judgment action against Lakefront claiming that they breached a duty owed to Current to notify ISOP of her death and possible UIM claim. After opening statements on May 21, 2002, the trial court found that Lakefront owed no duty under the insurance policy contract to notify ISOP of Current's death. The Estate appeals both the summary judgment and the directed verdict decisions, raising two assignments of error.
Assignment of Error No. 1
 {¶ 8} "The trial court erred to the prejudice of appellant, estate of Elaine Current, by granting summary judgment in favor of appellee the Insurance Company of the State of Pennsylvania, based upon an improper application of the notice provisions for Ohio uninsured motorist coverage."
 {¶ 9} The Estate maintains that by operation of law, it should receive the $10 million liability limit instead of the $25,000 UIM limit. The Estate further maintains that the notice and consent to settle provisions in the insurance policy have no application because the extended UIM limit arose by operation of law.
 {¶ 10} In reviewing the trial court's grant of summary judgment, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 11} In the case sub judice, Current was an employee of Lakefront. ISOP was the named automobile insurer for Lakefront. ISOP's insurance policy purported to limit coverage for UIM benefits to $25,000, while maintaining its liability limits for all else under the contract at $10 million.
 {¶ 12} The Ohio Supreme Court found in Scott-Pontzer v. LibertyMut. Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292, that a corporation's automobile insurance policy could be found to provide uninsured/underinsured motorist coverage for its employees where the policy is ambiguous and unclear as to who is an insured for purposes of UIM coverage. The insurance policy at issue in the Scott-Pontzer decision listed the company, Superior Dairy, as the named insured. Id. at 663. Further, it stated on the business auto coverage form of the policy that "throughout this policy the words you and your refer to the [n]amed [i]nsured shown in the [d]eclarations." Id. The UIM policy at issue inScott-Pontzer then defined an "insured" as follows:
 {¶ 13} "B. Who Is An Insured
 {¶ 14} "1. You.
 {¶ 15} "2. If you are an individual, any family member.
 {¶ 16} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 17} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Id. at 663.
 {¶ 18} In Scott-Pontzer, the Ohio Supreme Court determined that the word "you" as used in the drafted UIM policy was ambiguous. Id. at 664. The Court reasoned that R.C. 3937.18, which mandates UIM coverage, was designed to protect people, not vehicles. Id. Therefore, it determined it was "reasonable to conclude that `you,' while referring to [a corporation], also includes [the corporation's] employees, since a corporation can act only by and through real live persons." Id. As such, the court found that where "you" is defined solely as the company with no limiting language, "you" will also include the corporation's employees. Id.
 {¶ 19} Lakefront did obtain UIM coverage from ISOP. The declarations page of the ISOP policy listed Lakefront Lines, Inc. as the named insured. On the business auto coverage form, the policy states "[t]hroughout this policy the words `you' and `your' refer to the [n]amed [i]nsured shown in the [d]eclarations." Further, the same language used in the Scott-Pontzer UIM policy to define an insured was utilized by ISOP in Lakefront's UIM coverage.[1]
 {¶ 20} In this case, "you" is defined as the named insured, Lakefront Lines, Inc. According to Scott-Pontzer, the UIM policy was mandated to protect people, not vehicles. Because it has been found that UIM protects individuals, the "you" in ISOP's UIM policy is ambiguous because it is defined as protecting only Lakefront, a company. Therefore, under the reasoning in Scott-Pontzer, ISOP's UIM policy also covers Lakefront's employees since a corporation can only act by and through real live people. As such, Current, as an employee of Lakefront, would be covered by the UIM policy.
 {¶ 21} Further, pursuant to Linko, Exr. v. Indemn. Ins. Co. of N.Am., 90 Ohio St.3d 445, 2000-Ohio-92, the limitation amount of $25,000 for UIM coverage was improperly accepted by Lakefront. In Linko, the Ohio Supreme Court found that there must be a valid written offer and rejection of lower UIM coverage. Id. at 449. Three criteria must be met in order for a lowered amount of insurance to be accepted as a valid written offer: (1) a brief description of the coverage, (2) the premium for that coverage, and (3) an express statement of the UM/UIM coverage limits. Id.
 {¶ 22} In the case sub judice, the trial court correctly found that "there was not a proper offer and rejection of the lesser UM/UIM coverage." ISOP did not list the premium for the UM/UIM coverage on their coverage election form. Pursuant to the reasoning in Linko, without a proper offer, Lakefront could not make an express, knowing rejection of the $10 million liability coverage and accept lowered UM/UIM coverage of $25,000. Therefore, Lakefront's employees have UIM coverage up to the liability limit of $10 million.
 {¶ 23} However, ISOP's insurance contract includes two clauses that are relevant in this case: a prompt notice provision and a subrogation provision. The Estate maintains that because the UIM coverage arose by operation of law, the notice and subrogation provisions in the ISOP policy have no application. However, UIM benefits are a contract right. Luckenbill v. Midwestern Indemn. Co. (2001), 143 Ohio App.3d 501,508. "If [the Estate] then fails to satisfy the conditions the policy imposes on that right, [the Estate] forfeits [its] rights under the policy to UM/UIM coverage." Id.
 {¶ 24} The "prompt notice" provision in ISOP's business auto coverage form specifically states:
 {¶ 25} "A. LOSS CONDITIONS
 {¶ 26} "* * *
 {¶ 27} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 28} "a. In the event of `accident', claim, `suit' or `loss', you must give us or our authorized representative prompt notice of the `accident' or `loss'. * * *."
 {¶ 29} Where the insured fails to make prompt notice of a claim, there is a presumption that the insurance company has been prejudiced.Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, at paragraph one of the syllabus. The presumption may be rebutted by the insured. Id.
 {¶ 30} Here, the Estate did not give notice to ISOP of the claim until approximately four and a half years after Current's death. The trial court found that there was a breach of the notice provision and that ISOP was prejudiced by the breach. The Estate provided no evidence to overcome the presumption of ISOP's prejudice. As such, it was not error for the trial court to find ISOP's motion for summary judgment to be well-taken.
 {¶ 31} Because the trial court ruled that the notice provision was breached and that ISOP was prejudiced by the breach, we need not consider the breach of the subrogation clause claim.[2] The Estate's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 32} "The trial court erred to the prejudice of appellant, estate of Elaine Current, by granting a directed verdict in favor of appellee, Lakefront Lines, based upon an improper application of the notice provisions for Ohio uninsured motorist coverage."
 {¶ 33} The Estate maintains that Current was a third-party beneficiary to the contract and therefore Lakefront is liable for damages for not informing ISOP of Current's death. They further argue that a representative of Current's estate had asked Lakefront what benefits were available for the decedent, and that Lakefront only provided information about a life insurance policy.
 {¶ 34} We review a trial court's ruling on a motion for directed verdict de novo. United State Aviation Underwriters, Inc. v. B.F.Goodrich Co., 149 Ohio App.3d 569, 2002-Ohio-5429. A motion for directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses. Id.
 {¶ 35} The Estate first argues that it is a third-party beneficiary to the ISOP policy. The Estate is not a third-party beneficiary because the parties never intended the ISOP policy to benefit Current or her estate. Hill v. Sonitrol of Southwestern Ohio, Inc.
(1988), 36 Ohio St.3d 36, 40. However, the Scott-Pontzer decision did make Current (and therefore her estate) a party to the ISOP insurance policy. "It is well-settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature." Scott-Pontzer, 85 Ohio St.3d at 663. As such, the Estate has contract rights under the ISOP policy.
 {¶ 36} The Estate maintains that pursuant to the contract language, Lakefront was required to inform ISOP of Current's death. However, "you" is to have the same interpretation throughout the whole contract unless it would create an ambiguity. United Ohio Co. v. Bird
(May 18, 2001), Delaware App. No. 00 CA 31.
 {¶ 37} Here, "you" has been interpreted to mean Lakefront as well as its employees. Therefore, under the notice clause in the ISOP policy, it would mean that Lakefront as well as its employees as insureds are required to give "prompt notice" of a claim. So, Lakefront alone was not obligated to inform ISOP of the death. The Estate, as a party to the contract, was obligated to inform ISOP of Current's death under the notice provision.
 {¶ 38} However, during its opening statement, the Estate explained that it did inquire of Lakefront as to any benefits that were available to Current.[3] The Estate further stated that Lakefront only told them about a life insurance policy. We interpret the Scott-Pontzer decision as affecting cases retroactively by recognizing an existing right. As such, even though the parties may not have been cognizant of the Estate's potential UIM claim at the time the Estate inquired about benefits, the possibility of this potential claim existed.
 {¶ 39} As such, this presents a factual question as to the nature of the inquiry that was made of Lakefront concerning benefits available to Current. The trial court needs to make a factual determination of what questions were asked by the Estate upon Current's death concerning potential insurance policy claims. Utilizing the answers to these questions, and recognizing that Scott-Pontzer should be construed as an existing right at the time of the inquiry, the trial court must then determine whether Lakefront was under a duty to give the Estate a copy of the ISOP policy at the time it gave the Estate a copy of the life insurance policy.
 {¶ 40} The Estate's second assignment of error is sustained and the case is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, and reversed and remanded in part.
POWELL, P.J., and YOUNG, J., concur.
[1] {¶ a} The UIM policy defines an "insured" as follows:
{¶ b} "B. WHO IS AN INSURED
{¶ c} "1. You.
{¶ d} "2. If you are an individual, and `family member.'
{¶ e} "3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
{¶ f} "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'"
[2] {¶ a} We do note that the Estate argues that the subrogation provision does not apply. The Estate argues that ISOP has given no money or made any payments on behalf of the estate which is necessary for the subrogation clause to apply. The clause specifically states:
{¶ b} "A. LOSS CONDITIONS
{¶ c} "* * *
{¶ d} "5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
{¶ e} "If any person or organization to or for whom we make payment under this coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them."
[3] Edward Lawson was the first Administrator of Current's estate and made the initial inquiry as to benefits.