OPINION
{¶ 1} This is an appeal from the Lake County Court of Common Pleas granting third party defendants Continental Casualty Co. ("Continental"), TIG Insurance Company ("TIG"), and Federal Insurance Company ("Federal") summary judgment. Appellant, Robert Lang, seeks reversal of the trial court's declaratory judgment against him.
 {¶ 2} Appellant was seriously injured in a motorcycle accident on August 28, 1998 after colliding with a vehicle operated by Joseph Staska. Appellant received the policy limit of $100,000 from Staska's insurance company to compensate him for his injuries. Additionally, appellant sought UM/UIM coverage from Continental, TIG, Federal and Cincinnati Insurance Company ("Cincinnati"). According to appellant, all four companies insured Worthington Industries, Inc., as of the date of the accident. Appellant worked for a subsidiary of Worthington Industries, Inc., Worthington Precision Metals, Inc. As such, appellant maintains he is insured under each of the policies by virtue of his status as an employee of Worthington Precision Metal, Inc.
 {¶ 3} Cincinnati, a company providing excess insurance to Worthington Industries, Inc., filed an action for declaratory judgment claiming it was not obligated to pay any part of appellant's claim. In particular, Cincinnati argued that its policy provided a third level of excess insurance that was not triggered until appellant exhausted the $2,000,000 limit of the Continental primary policy, the $25,000,000 limit of the TIG first level excess policy, and the $50,000,000 limit of the Federal second level excess policy. Appellant subsequently joined Continental, TIG, and Federal as third party defendants. Motions for summary judgment were submitted by all parties. The trial court entered summary judgment in favor of all the insurers. From this judgment, appellant filed a timely appeal of the judgments granted in favor of Continental, TIG, and Federal. Cincinnati was not made a party to the current appeal. Appellant now raises the following assignments of error:
 {¶ 4} "[1.] The trial court erred in granting summary judgment in favor of Continental Casualty Co. and denying the summary judgment motion of Robert Lang on the basis that policy No. BUA 166615177 did not provide him UM/UIM coverage.
 {¶ 5} "[2.] The trial court erred in granting summary judgment in favor of TIG Insurance Co. and denying the summary judgment motion of Robert Lang on the basis that policy No. XLB 927 1262 did not provide him UM/UIM coverage.
 {¶ 6} "[3.] The trial court erred in granting summary judgment in favor of Federal Insurance Co. and denying the summary judgment motion of Robert Lang on the basis that policy No. 7909-06-91 did not provide him UM/UIM coverage."
 {¶ 7} Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 268.
 {¶ 8} This case involves similar issues to those addressed by the Ohio Supreme Court in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660. Therefore, by way of background we shall provide a brief sketch of the relevant features of Scott-Pontzer for a more fluid discussion of the issues in the appeal sub judice.
 {¶ 9} In Scott-Pontzer, the Supreme Court of Ohio held that, when a policy includes UM/UIM coverage, a plaintiff's decedent, who had been killed in an automobile accident that was caused by an underinsured motorist, was entitled to underinsured motorist (UIM) coverage under his employer's commercial auto liability policy. Id. at 665. There, the decedent's employer, a corporation, was the named insured under the policy, which defined "insured" for purposes of UIM coverage as including, "You," and "if you are an individual, any family member." Id. at 665. The court determined that the policy language concerning who was an "insured," was ambiguous because the word "you," while referring to the corporation, also could be interpreted to include the corporation's employees, "since a corporation can act only by and through real live persons." Id. at 664. Citing the principle that ambiguous language in an insurance policy is to be construed liberally in favor of the insured and against the insurer, the court concluded that plaintiff's decedent was an insured under the policy for purposes of UIM coverage. Id. at 665.
 {¶ 10} The court also determined that the plaintiff's decedent was entitled to UIM coverage even though he was not acting within the scope of his employment at the time of the accident because the policy did not so limit UIM coverage. Id. at 666. That is, Liberty Mutual's umbrella/excess[1] insurance policy restricted excess liability coverage to its employees acting within the scope of their employment. However, Liberty Mutual failed to offer UIM coverage through the umbrella policy. As such, the court held that any language limiting Liberty Mutual's umbrella policy restricting coverage only applied to excess liability coverage and not to the UIM coverage implied by law. Therefore, the court concluded appellant was entitled to UIM coverage even though the predicate accident occurred outside the scope of the decedent's employment.
 {¶ 11} With this in mind, appellant argues, in his first assignment of error, that the endorsements added to the Continental policy which named specific individuals as insureds did not remove the ambiguity from the Continental policy insofar as his employer, Worthington Precision Metal, Inc. was still listed as an insured. Appellant essentially argues, in accord with Scott-Pontzer, the ambiguity engendered by listing his employer as an insured for purposes of automobile coverage was not cured by adding the endorsements in question.
 I {¶ 12} Continental policy No. BUA 166615177 explicitly provides for UM/UIM insurance. In terms of coverage, the policy states: "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." The "Named Insured Endorsement" states: "Item 1 of the declarations page, the named insured is completed to read as follows: * * * Worthington Precision Metals, Inc. * * *." As such, appellant's employer, Worthington Precision Metals, Inc., is a named insured. However, in Continental's view, endorsement #11 and revised endorsement #18, which were added subsequent to the above endorsement and purport to apply to the entire policy, limit the coverage and therefore cure the Scott-Pontzer ambiguity. According to Continental, endorsement #11 adds a specific class of individuals to the policy in question, viz. "All executive officers" who have been "assigned an auto for their personal and business use" and their spouses while a resident of the same household." Moreover, revised endorsement #18 adds four specific individuals to the above definition of insured.
 {¶ 13} In Continental's view, appellant is not an executive officer of Worthington Precision Metals, Inc., nor was he driving a car assigned to him by his employer for business or personal use. Moreover, Continental argues that revised endorsement #18 refines the term "you" to include four individual persons specifically identified in the endorsement schedule. In effect, Continental contends when it added the four named individuals it defined the insured individuals and eliminated any ambiguity. Therefore, Continental maintains it comported with the requirements of the law and summary judgment was appropriate.
 {¶ 14} In response, appellant argues that the endorsements in question do not limit the coverage and, in fact, broaden the coverage, thereby failing to cure the Scott-Pontzer ambiguity. To wit, endorsement #11 adds "[a]ll executive officers" who have been "assigned an auto for their personal and business use" and their spouses while a resident of the same household." Moreover, revised endorsement #18 adds four specific individuals to the above definition of insured. In appellant's view, the addition of the four named parties to the Continental policy did not eliminate the ambiguity because it did not limit who was insured under the policy. In fact, the addition acted to expand the coverage. As such, the addition of the four named parties did not act to reduce or remove the fundamental ambiguity of the original endorsement. Rather, because Worthington Precision Metals, Inc., was still listed as an insured, the policy was still ambiguous with respect to coverage. We agree.
 {¶ 15} Specifically, endorsement #11 indicates "The following is added to WHO IS AN INSURED: Any individual named in the Schedule * * *." This endorsement applies when a company gives one of its executive employees a company car to drive be it for business or pleasure. Endorsement #11 effectively broadened coverage; hence, the term "added." Moreover, revised endorsement #18 states: "`YOU' AND `YOUR' ALSO REFER TO SUCH PERSON(S) OR ORGANIZATION(S)." It goes onto specifically list four individuals, but does not limit coverage solely to these four people. In fact, Worthington Precision Metals, Inc., remains an insured even in light of the addition of the four named parties. Therefore, the pivotal issue is whether listing the four named parties is sufficient to remove the kind of ambiguity emphasized in Scott-Pontzer.
 {¶ 16} Different jurisdictions offer differing answers to this question. For instance, Continental's position has garnered some support. In Westfield Ins. Co. v. Galatis, (Apr. 3, 2002), 9th Dist. No. 20784, 2002 Ohio App. LEXIS 1512 at 7-8, the court held that the inclusion of named individuals removed the ambiguity present inScott-Pontzer surrounding the term `you' as it referred to insureds in a corporation's policy. See, also, Heath v. The Fidelity Cas. Co. ofNew York, 9th Dist. No. 21221, 2003-Ohio-1303; Rice v. Buckeye StateMut. Ins. Co. Home Farm Ins. Co., 3rd Dist. No. 8-02-24,2003-Ohio-390; Grubb v. Michigan Mut. Ins. Co., 2nd Dist. No. 19575,2003-Ohio-1558.
 {¶ 17} Alternatively, in Addie v. Linville, 8th Dist. Nos. 80547 and 80916, 2002-Ohio-5333, the Eighth District Court of Appeals found that adding specific names to an insurance policy was insufficient to cure the ambiguity where a corporate entity was listed as an insured:
 {¶ 18} "Primarily, we reject the notion that the holding ofScott-Pontzer does not apply because a separate endorsement modifies the Business Auto Coverage Form of the liability policy to add certain named individuals to the definition of who is an insured contained therein. We note that the particular endorsement relied upon does not substitute for, but rather explicitly adds to, the definition of who is an insured in the Business Auto Coverage Form. Thus, the ambiguity found inScott-Pontzer remains and the ambiguous `you' must still be deemed to included employees of the corporate entity identified as the `Named Insured.'" Id. at ¶ 43. See, also, Reichardt v. Natl. Surety Corp., 12th Dist. Nos. CA-2002-02-007 and CA-2002-02-018, 2002-Ohio-5143; Sekulav. Hartford Ins. Co., 8th Dist. No 81295, 2003-Ohio-1160; Miller v.American Family Ins., 6th Dist. No. Ot-02-011, 2002-Ohio-7309: Shortt v.St. Paul Ins. Co., 5th Dist. No. 2002 CA 004, 2002-Ohio-7371.[2]
 {¶ 19} An ambiguous provision in a contract is one which admits to two or more reasonable, yet differing interpretations. Under the circumstances, one could reasonably interpret the Continental policy as including Precision Metals, Inc., and/or its employees. As the court stated in Scott-Pontzer: "Contrary to the appellees' contentions, the policy language of the Liberty Fire policy can be interpreted to include company employees. Assuming arguendo that `you' does refer solely to Superior Dairy, this does not foreclose the inclusion of Pontzer as an insured under the policy." Id. at 664. Therefore, although the endorsements in question name specific individuals and/or classes of individuals, they do not eliminate the ambiguities attendant to including the corporate entity as an insured under the policy. In fact, naming specific individuals or a specific class of individuals only serves to broaden the definition of an insured rather than restrict that definition. Sekula, supra, at 5. As such, endorsement #11 and revised endorsement #18 do not make unambiguous the infamously equivocal "you" at issue in Scott-Pontzer. Therefore, in accord with the tortured reasoning of Scott-Pontzer, the trial court incorrectly granted summary judgment in Continental's favor as there are material issues of fact regarding whether the policy was ambiguous with respect to who was insured. Hence, appellant's first assignment of error has merit on this issue.
 {¶ 20} Appellant next argues that endorsement #11 and revised endorsement #18 are not enforceable against Worthington Precision Metals, Inc., because there is no evidence that Worthington ever consented to them. We disagree. In the Continental policy, Worthington Industries, Inc., is the first named insured. Pursuant to the terms of the policy, the first named insured can agree to any changes to the policy. As such, Continental did not need the consent of all those listed as insureds in order to add the endorsements in question so long as Worthington Industries, Inc., consented. Therefore, this aspect of appellant's argument lacks merit.
 {¶ 21} To summarize, appellant's initial argument regarding the ambiguity of the term "you" within Continental policy No. 166615177 has merit. Therefore, the lower court erred by granting summary judgment in Continental's favor insofar as there is a genuine issue of material fact as to whether the addition of specific individuals served to cure the ambiguity in policy No. 166615177.
 II {¶ 22} Although they are directed at different third party defendants, appellants second and third assignments of error mirror one another for purposes of substantive analysis. Therefore, in the interest of simplicity, we shall address them together.
 {¶ 23} Appellant's argument can be summed up accordingly: Both the TIG and Federal excess policies were required to offer UM/UIM coverage. However, unlike Continental's policy, neither policy provided for, nor made any reference to UM/UIM coverage. Under such circumstances, UM/UIM coverage arises as a matter of law. Pursuant to Scott-Pontzer, language restricting insurance coverage must be expressly stated in the policy. The excess coverage was expressly limited by the nature of the policy, i.e., it was triggered only after the primary insurance was exhausted. However, because the UIM coverage was implied at law and it was not expressly restricted, appellant argues he is entitled to first dollar coverage on the excess policies.
 {¶ 24} Appellant cites Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541 for the proposition that where motor vehicle liability coverage is provided, even in limited form, UM/UIM coverage must also be provided. Moreover, appellant maintains that Selander adopted Demetry v.Kim (1991), 72 Ohio App.3d 692 for the proposition that "[t]here is nothing, absent clear language evidencing an intent to do so, to prevent uninsured/underinsured coverage from being broader than liability coverage." Appellant also relies upon German v. Therm-O-Disc, Inc. (Mar. 28, 2002), 5th Dist. No. 01CA51-2, 2002 Ohio App. LEXIS 1844, which held that a deductible provision within a commercial general liability policy did not apply to UIM coverage arising by operation of law. In German, the court stated:
 {¶ 25} "Based upon the rational [sic.] set forth inScott-Pontzer, we find the deductible provision at issue herein is a restriction on the commercial general liability coverage only, and does not extend to UIM coverage arising by operation of law. Accordingly, we find the UIM coverage is not subject to any deductible amount." Id. at 13.
 {¶ 26} Therefore, appellant concludes that, pursuant to the foregoing authorities, he is entitled to first dollar coverage on the TIG and Federal policies.
 {¶ 27} In response, TIG and Federal do not dispute that UM/UIM coverage arises as a matter of law, nor do they dispute that appellant is covered as an "insured" under the policy. However, TIG argues that its policy of insurance is an excess policy which does not provide coverage, even when implied by law, until damages exceed $2 million (the limit of the Continental policy). Similarly, Federal maintains that its policy of insurance is an excess policy which does not provide coverage, even when implied by law, until damages exceed $25 million (the limit of the TIG policy).
 {¶ 28} TIG and Federal note that the holding in Scott-Pontzer does not entitle a party to convert excess coverage to first dollar coverage because there is no ambiguity surrounding their role as an excess insurer. Just as the Ohio Supreme Court permits an insurer to draft policy language to cover varying arrays of coverage to any number of individuals, the same insurer is allowed to negotiate with its insured as to when the coverage is triggered. Scott-Pontzer, supra at 663. In effect, TIG's and Federal's policies clearly state their status as excess policies; thus, pursuant to the UM/UIM coverage is not broader than the base policy affording an insured excess coverage only.
 {¶ 29} TIG and Federal point out that "[e]xcess liability policies are designed to cover the risk of catastrophic losses. Such risks are inherently narrower than the risks covered by primary insurance." Titmanv. Penn-America Ins. Co. (Mar. 26, 1987), 8th Dist. No. 51915, 1987 Ohio App. LEXIS 6801, at 5-6. Therefore, it is axiomatic that an excess insurance carrier does not provide coverage below a specified floor. Id. Further, "R.C. 3937.18 requires that UMC will be provided unless expressly waived, but only on the same terms as the liability coverage in the policy." Moyer v. Transamerica Insurance Company, (Oct. 22, 1987), 8th Dist. No. 53524, 1987 Ohio App. LEXIS 9271, at 1. Since the liability coverage on the excess policies did not begin until a retained threshold limit was exceeded, the UIM coverage engrafted by statute begins at the same point. Id. We agree with TIG and Federal.
 {¶ 30} Factually, the TIG policy has a condition precedent to the excess coverage that the entire $2 million limit on the Continental policy be exhausted before TIG is obligated to pay. Similarly, the Federal policy contains a condition precedent to the excess coverage that the entire $25,000,000 limit of the underlying TIG policy must be exhausted before Federal is obligated to pay on a claim.
 {¶ 31} A condition precedent is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend. Mumaw v. Western and Southern LifeIns. Co. (1917), 97 Ohio St. 1, 9; see, also, Polek v. Tillimon (Mar. 1, 2002), 6th Dist. No. L-01-1354, 2002 Ohio App. LEXIS 873, citing Trohav. Troha (1995), 105 Ohio App.3d 327, 334. "If a condition precedent is not met, a party is excused from performing the duty promised under the contract." Id. at 334.
 {¶ 32} Moreover, a condition precedent acts to allocate risk in a contractual relationship and must be either satisfied or excused before liability on the predicate promise becomes a matter of present duty. The exhaustion of the underlying insurance was fundamental to the operation of the insuring agreement and to the very existence of the excess insurance contract itself. If the underlying limits were not exhausted, the excess policy was not activated. Under such circumstances, there would be nothing upon which to engraft UIM coverage as a matter of law. Thus, absent exhaustion of the underlying coverage, there has been a failure of an essential condition precedent to the excess insurance policy. See Ohio State Grange Mut. Ins. Co. v. Shimandle (Nov. 4, 1994), 11th Dist. No. 94-L-032, 1994 Ohio App. LEXIS 4977. Put differently, where the condition precedent to coverage has not been fulfilled, it is as if the coverage never arises. Therefore, where the contract ceases by failure of a necessary condition precedent, there would be no policy upon which UIM coverage could be imposed as a matter of law. Id.
 {¶ 33} In Scott-Pontzer, the restrictions in the excess policy regarding "scope of employment" did not apply to UM/UIM coverage implied by operation of law because the policy did not expressly stipulate to the restrictions. Id. However, in Scott-Pontzer there was no ostensible issue as to whether the threshold condition precedent to the excess policy had been met. The only issue was whether the UIM insurance implied at law was subject to the limiting language of the excess policy. In this respect the court determined that the limiting language did not apply to the UIM insurance; however, the court did not address whether the policy itself was changed from excess coverage to first dollar coverage by virtue of the implied UIM coverage. As such, Scott-Pontzer does not specifically address the issue before us today and, as such, its holding does not directly bear on the current analysis.
 {¶ 34} Whenever a contract is dependent on a condition precedent, the parties' expectancy interests are inextricably tied to the satisfaction of the basic condition. In the current case, the parties' expectancy with respect to the insurance contract was tied to the exhaustion of the underlying insurance coverage, i.e., without the satisfaction of this condition, the insured had no right to payment and neither TIG nor Federal incurred any payment obligations. The condition precedent, although a restriction on the rights and obligations of the parties, is not tantamount to the "language * * * restricting insurance coverage" on the excess policy in Scott-Pontzer. In our view, the condition precedent acts as a negotiated predicate condition for coverage. As such, the predicate condition applies to UM/UIM coverage imposed by law for the benefit of the insured to the same extent that it applies under the policy's terms for liability coverage, which likewise benefits the insured when he is at fault. Luckenbill v. MidwesternIndemnity Co. (2001), 143 Ohio App.3d 501, 508.
 {¶ 35} Furthermore, a condition precedent cannot logically be a restriction of the sort identified by the Court in Scott-Pontzer. Contractual restrictions restrict an existing expectancy. However, in the current matter, appellant, as an insured, had no expectancy interest until his damages transcended the $2 million general coverage. Therefore, insofar as appellant had no expectancy interest in the excess policies until the general policy was exhausted, he is not entitled to first dollar coverage on the excess policies.
 {¶ 36} Such an outcome is appropriate because the overwhelming concern of any court when construing a contract is to ascertain and effectuate the intent of the parties. Trinova Corp. v. PilkingtonBrothers, P.L.C., (1994) 70 Ohio St.3d 271. Absent ambuigity, there is no necessity for interpretation. Allen v. Standard Oil Co., (1982),2 Ohio St.3d 122. As such, UM/UIM coverage implied by law may not be diminished in its scope by circumstantial exclusions which are matters the parties never contemplated, but the right to coverage may be conditioned on compliance with provisions the parties did contemplate.Luckenbill, supra, at 508.
 {¶ 37} In the current matter, it is undisputed that the TIG and Federal policies were excess policies. By their very nature, excess policies do not provide coverage below a specified floor. Hence, an excess insurer is not generally liable for any part of the loss or damage which is covered by other insurance (be it collectible or uncollectible), but is liable only for the amount of loss or damage in excess of the coverage provided by all other applicable insurance policies. To adopt a theory of "drop down" liability on an excess policy would not only run afoul of the provisions contemplated by the parties, but would fundamentally alter the risk an excess coverage provider is obligated to provide by agreeing to issue excess liability insurance protection. Therefore, "drop down" liability protection should not be judicially imposed on Ohio excess insurance providers as a matter of public policy. Wurth v. Ideal MutualIns. Co. (1987), 34 Ohio App.3d 325, 328. See, also, Meridian Mut. Ins.Co. v. State Farm Mut. Auto Ins. Co., (S.D.Ohio, 1998), C2-97-753, 1998 U.S. Dist. LEXIS 22885; Kelley v. Ernst (1995), 108 Ohio App.3d 207.
 {¶ 38} Moreover, appellant's reliance on Selander, and Demetry,
supra, is misplaced. As indicated above, appellant cites these cases for the proposition that there is nothing, absent clear language, to preclude UIM coverage from being broader than liability coverage. In relation to this issue, we acknowledge that UIM coverage implied by operation of law can be broader than the underlying liability coverage. However, this expansion can only occur after the underlying policy is activated. To hold otherwise would transform the nature of the entire policy and contravene the intent of the parties. Moreover, it seems to us that a validation of appellant's argument would not only hold excess insurers responsible for "drop down" liability for purposes of UIM coverage. It would also permit the possibility of extending UIM coverage beyond its contractual ceiling. After all, a policy's ceiling is as much "language * * * restricting insurance coverage" as its floor. Therefore, in recognition of the important public policy concerns at issue and in interest of preserving the basic intent of the parties to the excess policies, appellant's argument lacks merit.
 {¶ 39} Therefore, because there is no genuine issue of material fact regarding TIG's and Federal's obligations under their respective excess policies, the trial court did not err in granting summary judgment.
 {¶ 40} For the foregoing reasons, appellant's first assignment of error has merit, but his second and third assignments of error are overruled. Therefore, the judgment of the Lake County Court of Common Pleas is affirmed in part; reversed in part, and the matter is remanded to the trial court for proceedings consistent with this opinion.
JUDITH A. CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.
[1] An umbrella policy provides excess coverage beyond an insured's primary policies. Midwestern Indemnification Co. v. Craig (1995),106 Ohio App.3d 158, 164. Umbrella policies are different from standard excess coverage insurance policies in that they are meant to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). American Special Risk Ins. Co. v. A-BestProducts, Inc. (1997), 975 F. Supp. 1019, 1022. "The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to `drop down' to provide primary coverage for situations where the underlying insurance provides no coverage at all." Id. In the current matter, the TIG and Federal excess policies implement a form of general vertical coverage triggered by specific conditions, viz. the satisfaction of the particular underlying coverage. However, in the instant case, the TIG and Federal excess policies relate only to Continental's business automobile policy.
[2] The Supreme Court, recognizing the split of authority on this issue, has agreed to determine whether the inclusion of a "Broadened Coverage Endorsement," adding individual named insureds to a commercial motor vehicle liability policy eliminates any ambiguity over the use of the term "you" therein. Westfield Ins. Co. v. Galatis (2002),96 Ohio St.3d 1446.